10 N.J. Super. 528 (1950)
77 A.2d 467
FANNY B. KELLY, WIDOW AND GENERAL ADMINISTRATRIX OF THE ESTATE OF LEROY KELLY, DECEASED, PETITIONER-APPELLANT,
v.
HACKENSACK WATER CO., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1950.
Decided December 13, 1950.
*531 Before Judges FREUND, PROCTOR and ROGERS.
Mr. Seymour A. Smith argued the cause for the appellant (Messrs. Hein & Smith, attorneys).
Mr. Francis V.D. Lloyd argued the cause for the respondent (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. William J. Morrison, Jr., and Mr. Samuel W. Zerman, of counsel).
The opinion of the court was delivered by ROGERS, J.A.D.
This is a workmen's compensation case wherein appellant's claim is based upon the accidental death of her husband, Leroy Kelly, arising out of and in the course of his employment by respondent, Hackensack Water Co.
At the close of petitioner's case before the Division of Workmen's Compensation, respondent's motion for judgment of dismissal, upon the evidence presented, was granted. The appeal is from that judgment. It is made to this court pursuant to Rules 3:81-7, 8 because our compensation statute, R.S. 34:15, contains no procedure for appeal where, as in this case, the alleged compensable accident occurred outside this State. Cf. Mulhearn v. Federal Shipbuilding and Dry Dock Co., 2 N.J. 356 (1949).
It is fundamental that, upon respondent's motion for dismissal proposed at the conclusion of petitioner's case, all reasonable inferences deducible from the evidence submitted must be resolved in petitioner's favor and that therefrom it be determined whether a prima facie case was presented. The hearing officer concluded that the evidence did not establish a compensable claim under our statute because it did not appear that the employee's death resulted from an accident arising out of and in the course of his employment. Upon *532 consideration of the evidence, we are convinced that petitioner established a prima facie case and that the judgment of dismissal was error.
Two questions are raised by this appeal. The first is, whether the evidence makes out a prima facie case of compensable accident arising out of and in the course of decedent's employment. The second is, whether the hearing officer erred in refusing to fully recognize the demands made in the subpoena duces tecum issued by petitioner.
The first point comprises two phases and was so presented in the briefs and at argument. The primary one is whether the evidence showed the alleged accident which caused the employee's death was such within the intendment of the statute, or did the evidence demonstrate that his death resulted from skylarking, intoxication, or willful negligence. If the accident was within the statute, there remains the question of whether it arose out of and in the course of decedent's employment.
The statutory "accident" means such a happening in the usual and broad sense. Our courts have construed it to be `an unlooked for mishap or untoward event which is not expected or designed." Bryant, Admx. v. Fissell, 84 N.J.L. 72 (Sup. Ct. 1913); Geltman v. Reliable Linen & Supply Co., 128 N.J.L. 443 (E. & A. 1942).
The substantial facts surrounding the accident are:
Kelly's death occurred while he was attending his employer's outing at Bear Mountain Park, New York, in September, 1949, and it resulted from his fall into a ravine from a steeply declining hard surfaced pathway upon which, at the end of the afternoon, he was returning to the boat provided by the employer for the trip to and from the outing. The path was curved and steep enough to require one to hold back from gaining too much momentum in travelling down it to the river level from the upper park area where the picnic events were held. A rustic fence about 3 1/2 feet high extended along the pathway separating it from the ravine and to a point where the pathway at a sharp angle met the ramp bridge *533 leading over railroad tracks down to the boat. Kelly fell from the pathway a few feet from its junction with the ramp bridge. There is no evidence as to how he fell, except for the statement of one witness who was also going down the path about 25 feet behind decedent. She says that she suddenly saw an object go over the fence, that she screamed and a number of people then ran to the scene. She found later that the object she saw was Kelly. From the fence to the edge of the precipice there was but a narrow ledge sloping toward the chasm.
Kelly's death resulted from a fractured skull. He was 60 years old, over six feet tall and weighed more than 200 pounds and he was in sound health.
Respondent's brief urges that the evidence does not prove Kelly went over the fence by accident and, that accordingly, petitioner has not met the burden of adducing preponderant evidence in favor of her hypothesis that decedent accidentally fell over the fence. In Jochim v. Montrose Chemical Co., 3 N.J. 5 (1949), at page 8, Justice Ackerson said:
"In civil cases it is sufficient if the circumstantial evidence be such as to afford a fair and reasonable presumption of the facts inferred. Circumstantial or presumptive evidence, as the basis for deductive reasoning in the determination of civil causes, is a mere preponderance of probabilities. The only requirement is that the claimed conclusion from the offered fact must be a probable or more probable hypothesis, with reference to the possibility of other hypotheses. This is merely a rational inference, i.e., based upon the common experience of mankind. In the final analysis `probability, and not the ultimate degree of certainty is the test.' Seiken v. Todd Dry Dock, Inc., 2 N.J. 469, 475 (Sup. Ct. 1949); Hercules Powder Co. v. Nieratko, 113 N.J.L. 195, 203 (Sup. Ct. 1934); affirmed, 114 Id. 254 (E. & A. 1934); Manziano v. Public Service Gas Co., supra; Russo v. Wright Aeronautical Corp., 1 N.J. 417, 421 (Sup. Ct. 1949)."
Clearly, in our judgment, the surrounding circumstances raise a reasonable presumption that Kelly's death resulted from an accidental fall over the fence on the steep pathway sustained at his employer's outing. The evidence does not imply that Kelly's fall was suicidal or caused by his willful negligence. Such acts are never presumed. Jochim *534 v. Montrose Chemical Co., supra. There is also no inference to be drawn that intoxication contributed to the accident because Kelly was at the bar in the Inn at the Park before the accident. There is no evidence that he indulged in intoxicating beverages at all on that occasion.
The evidence at the hearing before the Workmen's Compensation Division also showed the following facts pertaining to Kelly's employment at the time of the accident.
The employer's outing had been an annual event since 1932, except for one year (1948). Following its then abandonment, there was a protest by the employees and it was reinstated in 1949. The protest included a claim that the outing was one of the "benefits" which respondent had guaranteed to continue by the terms of the employment agreement bargained for between employer and employees in 1948. The respondent had always paid the entire expense of the outings and they were conducted completely under its control. Arrangements for the event were made on respondent's time by representatives of employer and employees. All employees were invited and urged to attend. Tickets were issued to employees bearing their names and they were permitted to bring such relatives as were specifically approved by respondent. For a few years prior to, and inclusive of 1949, the employer had been induced by a representative of the employees' union to permit friends of the employees to attend the outing provided the employees first secured specific approval of such guests. Employees attending the outing were paid their regular day's wages. In the event of non-attendance, the employee was required to work at his regular employment. Respondent checked upon employees' attendance at the outings, and collected the tickets issued for the occasions.
On the day in question, the employees, including Kelly, boarded the boat chartered by respondent to take them to Bear Mountain Park. The incidents of this outing conformed in all respects with those related in the foregoing paragraph. During that journey respondent's top officials called the employees together and addressed them; awarded pins and *535 money for years of meritorious service; praised the employees for good work, told them to do a good job and that respondent desired to get them all together like one family. All employees in the maintenance department where Kelly worked attended the picnic. Respondent provided other entertainment aboard the boat that day.
When the boat arrived at the Park, Kelly and most of the employees walked from the river level up the steep paved pathway to the elevation where the picnic was to take place. This is the same path from which Kelly fell and was fatally injured, when leaving the picnic area at the end of the afternoon. Respondent circularized the employees and urged their attendance at a softball game to take place at the outing between representative teams from its Weehawken and Hackensack branches. These teams also represented respondent when they played in a league of industrial teams. The employer furnished these teams with the required equipment, and the game was played at the outing and witnessed by the employees. Respondent admitted the entire cost of conducting the picnic "was charged to operating expense * * * as a normal expenditure." This charge included the salaries of respondent's committee on the picnic arrangements, the cost of the service pins and the cash awards to employees. The outlay was approximated at $3,500 to $4,000.
The tests of compensable injury by accident under our workmen's compensation statute are that the accident arose (1) out of and (2) in the course of employment. The primary question for determination here is whether Kelly was in respondent's employ during his attendance at the outing. The substantial facts sustaining his employment at the time are that the outing had become a custom or usage between employer and employees with resulting mutual benefits; they had become occasions for improving management and labor relations through employer-employee meetings for speeches by company officers praising employees' work, for awarding medals and prize money for meritorious services, for urging employees to better efforts, and for requesting concerted action *536 as one big family for the welfare of all. Employees' interest and concern in respondent was sustained and stimulated by the events at the picnics such as the competition between the two softball teams which respondent maintained in the local league of industrial teams. These activities were beyond question mutually beneficial, as, it may be assumed, respondent well realized. Literal compulsory attendance at the company's affairs would not have produced the desired employee enthusiasm, and it is inferable that it was deemed sound policy for respondent not only to meet the whole cost of the outings but to pay the wages of all attending employees as well. It would not be realistic to find that respondent's complete control of the outing and the inducement to the employees of wages without work while enjoying the affair did not constitute a far greater and more effectual compulsion upon the employees' attendance than if the outing were paid for by respondent and turned over to the control of the employees, upon condition of mandatory attendance. In the latter instance, it would be human for the employees to resent and to resist the obviously contrived bounty of the employer, and the benefits to the employer and employees reasonably would be less substantial. We perceive that a wholesome contribution to a sound employer-employee relationship resulted from the outing as it was conducted; that the affair was mutually beneficial; and that it was not merely respondent's gratuity for the exclusive benefit of the employees. The case is within the area of and controlled by the principle enunciated in Saintsing v. Steinbach Co., 1 N.J. Super. 259 (App. Div. 1949); affirmed, 2 N.J. 304 (1949); Freedman v. Spicer Mfg. Co., 97 N.J.L. 325 (E. & A. 1921). We find that Kelly was in respondent's employ when the fatal accident occurred. This view is strengthened by the evidence that the outing was one of the benefits bargained for in the wage agreement entered into by respondent in 1948. The rule applied here is widely approved. Miller v. Keystone Appliance, Inc., 133 Pa. Sup. 354 (1938); Fagen v. Albany Evening Union Co., 24 N.Y.S.2d 779 (1941); Kenney v. Lord & Taylor, *537 Inc., 254 N.Y. 532 (1930); 26 N.C.C.A. (N.S.) 1 and notes following: 115 A.L.R. 993, Ann. Cf. Wilson v. General Motors Corp., 298 N.Y. 468 (1949).
Having found that the evidence shows Kelly's death resulted from an accident within the intendment of the statute and that it establishes at the time he was in respondent's employ, it follows that the fatality occurred out of and in the course of his employment.
The remaining question is whether there was error in refusing to fully recognize the demands for production of respondent's records contained in the subpoena duces tecum issued by petitioner. The demand was extremely broad, it was made practically at the opening of the trial and compliance would have cast an unwarranted burden upon respondent. In these circumstances the enforcement of the subpoena was discretionary, and we find the ruling of the Deputy Director did not amount to abuse.
The judgment of dismissal of the petition is reversed and the application is remanded.