305 N.Y. 544 (1953)
In the Matter of the Claim of Michael Tedesco, Appellant,
v.
General Electric Company, Respondent. Workmen's Compensation Board, Respondent.
Court of Appeals of the State of New York.
Argued June 1, 1953.
Decided July 14, 1953
Arthur J. Harvey for appellant.
J. Vincent Smith for General Electric Company, respondent.
LEWIS, Ch. J., CONWAY, DESMOND, DYE and FULD, JJ., concur; VAN VOORHIS, J., taking no part.
*546 FROESSEL, J.
Claimant was a member of the General Electric Athletic Association (hereinafter called GEAA), a membership corporation open only to employees of General Electric Company or others working in its plant at Schenectady. In addition, former employees who were members of GEAA at the time they left General Electric's employ were permitted to retain their membership at the discretion of the board of directors. Claimant's claim for compensation is based upon injuries, consisting of a compound fracture of the left ankle, sustained in a softball game conducted under the auspices of GEAA and held on company property. The board, finding that such injuries arose out of and in the course of his employment, made an award. The Appellate Division, Third Department (one Justice dissenting), reversed and dismissed the claim, relying principally upon Matter of Wilson v. General Motors Corp. (298 N.Y. 468), in which compensation cases arising out of athletics or other recreational pursuits were thoroughly canvassed.
The Wilson case (supra) also dealt with an injury resulting from a ball game. There the employees had organized a baseball league. Games were played on their own time in parks in the city of Buffalo, "many miles from the employer's plant" (p. 471). The games were not advertised in any way, and no outside publicity whatsoever attended their playing. They were in no way connected with the employer, and in no manner subject to its control, and no business advantage or benefit accrued to it. In the case before us, there is an abundance of evidence to indicate employer dominance and benefit. Factors not present in the Wilson case are here predominant; hence the principles there enunciated, and upon which we denied an award, operate here to sustain an award favorable to claimant.
GEAA was incorporated in 1930 as a membership corporation. This fact has given rise to some argument as to whether or not compensation can be had here or certain evidence admitted without piercing the corporate veil. It is our opinion that there is no such issue actually presented. The true question is whether or not claimant's activities as a member of GEAA were *547 so related to his employment as to render an injury in connection therewith compensable; there has been no attempt to assert against the employer a claim which should be made against GEAA. As between claimant and employer, we do not see that it makes any difference that a third party  GEAA  may have been involved in the athletic and recreational program, so long as that program was actually related to the employment in any substantial way. Accordingly, it may not be said that the board disregarded GEAA's corporate entity; the situation is no different than if the entity were an unincorporated association or any other voluntary organization of employees.
Needless to say, GEAA is maintained as an independent organization, in form at least. Thus members pay dues of $4 per year, and the management of the association and its activities are nominally in the employee-members and the professional staff of GEAA. The circumstances which must interest us, however, are those indicative of domination by or benefit to the employer. These may be divided roughly into classifications of finances, interrelationship and control.
The T-shaped clubhouse, approximately 210 by 60 feet, and the surrounding 10 acres of enclosed grounds of GEAA are part of the Schenectady plant of the employer, and the association is permitted to use them rent free. Certain charges are made, however, for such items as heat, light, power, taxes, etc. In addition to free rental, free advertising in the employer's newspaper, as well as other benefits, the stipulated financial statement indicates that the employer subsidized the operations of the association during the years 1939-1947 to the extent of $55,277, and that the association, in turn, paid over to the employer during the years 1934-1938 upwards of $2,000 in excess of current charges. It further establishes that an outright gift of $3,000 was made by the employer in the year 1946 "to Cover Loss Attributable to Strike" in 1945. How could the employer justify these substantial contributions if they were for noncorporate purposes? There is also testimony in the record that the employer on occasion provided transportation for "varsity" softball teams to games played on outside fields.
In its very inception, GEAA's constitution provided for a board of directors, of whom one member was to be appointed by the employer as its representative. Since but two negative votes *548 were required to reject an application for membership, the employer had a 50% control in this respect. It may be noted that, while the certificate of incorporation is dated December 23, 1930, the aforesaid financial statement indicates that there was a functioning organization as early as September, 1930. Members could pay dues by deduction from the employer's payroll; indeed, 75% of the members did so. Claimant testified that when he joined GEAA he did so by application to the payroll department in the plant, a procedure which, it may be inferred from his testimony, was the regular and usual means of applying for membership. Application cards could be obtained "via internal mail" by calling "ext. 2085".
Athletic and other activities received a great deal of free publicity in the employer's plant newspaper, Schenectady Works News, in which solicitations for membership also appeared. Sports events, such as ball games, also were publicized and reported in the Schenectady daily newspapers; such games attracted spectators from the general public, who were permitted to attend without charge  all of which advertised the employer. In the interplant leagues, to one of which claimant belonged, teams were formed among the employees working in a particular building or department and were so identified in the aforesaid newspaper articles.
In addition to the athletic activities, the association provides social recreation, as well as a cafeteria and catering service for all of the employees, whether or not members. "Section parties" are held weekly, each party being for a different group of employees. The admitted purpose of these parties is "promoting good will amongst employees". Such parties are arranged with representatives of the employer, and on occasion the superintendent of the employer would address those present at the party. The management representative on GEAA's board was consulted about these parties, and would give approval to contact employees during working hours in connection therewith.
The association's athletic director testified that the clubhouse and facilities were closed down during the 1945 strike and no one was permitted to use the same. He said: "I didn't come near the place. I was just told that we were not working and to keep away." More certain evidence of ultimate control could *549 hardly be found. The company was in the position where it could have stopped the entire program at any time. In fact, it did so for nine weeks.
Minutes of GEAA's directors' meetings were put in evidence. The employer objects to this, but in view of the fact that it had a representative on the board and that liberal rules of evidence apply in compensation hearings (Workmen's Compensation Law, § 118), we see no error in this procedure. Such minutes disclosed that the employer's representative, Rugen, had, in 1941, discussed with the company's law department the advisability of discontinuing functions at the clubhouse "under the present name of General Electric Athletic Association and what steps would be necessary to disband such an organization", and that GEAA's property had apparently been taken over by the company.
At a meeting the following year, Rugen told the board members that he felt GEAA affairs in the future would have closer contact with works management because of Mr. Linder's "personal interest in the continued operation of the Club." Linder was then assistant works manager of the plant, and a member of the board of GEAA. At that same meeting Linder stated "that the temporary Works Recreation Committee had been discontinued and that the Club had been put back into the hands of the G. E. A. A. Board of Directors", and that it was definitely hoped no more inroads would be made in the building, but that "if the war efforts should demand or require more space and that space was available there could be no other alternative than to use it." At the same 1942 meeting, a change in the personnel of the board, to provide for shop representatives, came up, and "Mr. Linder suggested for the time being they continue on the present basis. He said these men will be most desirable from the company's viewpoint and that it would be best to minimize disturbance for the moment as much as possible." In relation to the bowling alleys it was said: "If there is any possibility of our going into the red on this project, Mr. Linder will be consulted and appropriations for necessary expenditures discussed."
The minutes of the 1943 meeting make it plain that candidates for employment with GEAA were contacted and dealt with through the personnel office of the Schenectady plant. Excerpts *550 from the minutes of other meetings tend to further indicate a close relationship with, and domination by the employer over, the activities of GEAA.
There was, it seems to us, more than adequate basis for the board's conclusion that claimant's injury was incurred out of and in the course of his employment. All of the activities of GEAA, which are conducted on the employer's property, are obviously carried out with the sole purpose of providing an integrated plan of recreational activity in which the employer is dominant. However beneficent to the employees such plan may be, its primary motivation is undoubtedly the furtherance of employee relations and the building of an esprit de corps and good will which redound to the benefit of the employer. The inseparable connection with the employment and the complete and ultimate control not only possessed, but exercised, by the employer could hardly be better illustrated than by the complete cessation of association activities during the 1945 strike. The contrast between this and the Wilson case (supra) is thus aptly epitomized in that fact alone. Moreover, the inapplicability of that case is also illustrated by the presence here, and the absence there, of the following factors, among others: (1) the activities were on the premises; (2) the financial support was substantial, not slight; (3) the control by the employer was dominant; (4) advertising and business advantage benefited the employer; (5) the employer could halt the program at any time.
The order of the Appellate Division should be reversed, and the award of the Workmen's Compensation Board reinstated, with costs in this court and in the Appellate Division.
Order reversed, etc.