(No. 33402.—

JEWEL TEA COMPANY, INC., Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(KENNETH LEJMAN, Plaintiff in Error.)

*Opinion filed May 20, 1955—Rehearing denied September 19, 1955.*

IRVING M. GREENFIELD, of Chicago, for plaintiff in error.

ANGERSTEIN & ANGERSTEIN, of Chicago, for defendant in error.

Mr. JUSTICE DAILY delivered the opinion of the court:

This court has allowed the petition for writ of error filed by the claimant, Kenneth Lejman, to review a judgment of the superior court of Cook County, which set aside the workmen's compensation award entered by the Industrial Commission against claimant's employer, Jewel Tea Company, Inc., hereinafter referred to as defendant.

The sole issue is whether claimant's accidental injuries, sustained while playing baseball with a team of company employees, in an intra-company league competition, after working hours and off company premises, arose out of and in the course of his employment under the terms of the Workmen's Compensation Act.

From the record it appears that Kenneth Lejman, hereinafter referred to as plaintiff, sustained certain serious injuries while participating in a Jewel Tea Company league softball game. This league consisted of 15 teams, organized from among the employees of defendant's 153 stores in the Chicago area. The stores were divided in three divisions, each consisting of five districts, and teams were estab-

lished in each district. The district teams played each other to establish a divisional champion, and ultimately the divisional champions competed to determine the league champion of the year. The divisional championship teams were awarded small trophies and the league champions were presented with larger trophies by the executives of the Jewel Tea Company at a special function. Each team was named in part after the district manager, and the team on which plaintiff played was known as "Jeffrie's Gems," since Paul Jeffreys was the district manager. He appointed the manager-captain of the team, who, in turn, selected the players from among the full-time employees in stores within the particular district. The company, since 1949, provided balls, bats, and T-shirts bearing the district team name on the front, and the emblem "Jewel Food Stores" on the back. The employees furnished their own shoes, jackets, caps, and pants. There were no facilities for playing on company premises in most districts, and the games were held at public ball parks, with no admission charge or accommodations for the spectators, who were mostly friends and relatives of the players. No money was received by the team for playing, nor were they granted any time off from their work for practice.

After the teams were organized there was an annual dinner meeting, held on the company premises and paid for by the company, and attended by all the managers of the teams and the personnel chief of the company, at which the season schedule was arranged and rules adopted for games among the Jewel teams. These scheduled games were the only games played by the teams, since the company discouraged the teams from joining the Industrial Soft Ball League. The former company personnel chief testified that the ball games were not used as any advertising media, but that it was part of the program of maintaining a good state of welfare that the athletic activities were encouraged. He stated, "We felt that anything that drew Jewel people to-

gether in a social way promoted cooperation and furthered the joint effort of all of us."

Information about the games was disseminated through a weekly company publication, *The Flash,* distributed to all employees, and also by announcements on the special program for Jewel Tea Company employees each morning on the company operated FM radio station, WMOR, which was listed in the newspaper. The championship game was further publicized by photographs and written accounts in the company's monthly publication, *The Crusader,* delivered to all employees.

With reference to the particular team on which plaintiff played, it appears that the district manager, Paul Jeffreys, who, as part of his duties, is charged with recommending promotions among employees in the district, designated Woody Woodruf, an employee in one of the stores in the district, to organize and run that team. Jeffreys also made up a schedule of games for the entire division. According to the evidence there was some difficulty in getting enough men out for the team, and Woodruf, on his day off, called upon the employees in the various stores in the district, during business hours, asking them to participate. When Woodruf asked plaintiff, he replied, "Not this year." Whereupon Woodruf said, "Why not? Don't you want to play any more? Haven't you any spirit?" Plaintiff stated that Woodruf "made me feel like a fool, so I went out for the team."

On July 24, 1950, while playing in a scheduled softball game between the "Jeffrie's Gems" and another intra-company team, on a public playground, after his hours of employment, plaintiff was seriously injured while sliding into third base. For that injury plaintiff sought compensation under the Workmen's Compensation Act and instituted this proceeding.

The arbitrator denied the claim on the ground that plaintiff failed to prove that the accidental injury arose out

of and in the course of his employment. Additional evidence was adduced on review, and the Industrial Commission entered an award allowing plaintiff a sum for temporary total disability, and further sums for the permanent loss of use of 50 per cent of the left arm and 50 per cent of the left leg, and for medical, surgical and hospital care. The superior court reversed the commission, and held that unless the playing was compulsory or was done on company time and paid for as part of the employee's duties, the injury could not be deemed to arise out of and in the course of the employment.

In this proceeding plaintiff argues that it was a question of fact as to whether or not the accidental injury in the case at bar arose out of and in the course of the employment, hence, the finding of the Industrial Commission, unless against the manifest weight of the evidence, was binding and conclusive, and the superior court was without authority to set it aside; that under the facts in this case according to the greater weight and trend of authority the accident could be deemed to arise out of and in the course of employment as a matter of law; and that the Workmen's Compensation Act is a remedial act, which should be liberally construed.

Defendant, however, argues that the act does not make the employer an insurer of the safety of his employees at all times, but provides compensation only for industrial accidents arising both out of and in the course of the employment; that to extend the provisions of the act and impose liability upon the facts in the instant case, or upon employers who aid in and provide recreational or athletic facilities for employees for the essential purpose of aiding in the health, morale and good will between employees and their employers, would be judicial legislation and would violate not only the language of the act, but its beneficial purposes. Defendant contends further that the essential dispute herein is not as to the facts in the case, but what

the facts show as a legal conclusion, hence, the court is not bound by the legal conclusions of the Industrial Commission; and that plaintiff did not establish that the injuries sustained while playing softball after his hours of employment and off the employer's premises, in a public park, voluntarily and for which he was neither hired nor paid, arose out of and in the course of the employment.

In determining the rights of the parties herein, it is evident that plaintiff has the burden of establishing by positive evidence, or by evidence from which the inference can fairly and reasonably be drawn, that he sustained accidental injuries arising out of and in the course of his employment. While the findings of fact of the Industrial Commission are conclusive upon this court unless they are manifestly against the weight of the evidence, the legal conclusions of the commission, based upon such findings, are subject to review by the courts. (*Dietzen Co.* v. *Industrial Com.* 279 Ill. 11; *Northwestern Yeast Co.* v. *Industrial Com.* 378 Ill. 195.) This court has not previously adjudged the issue presented herein of whether injuries sustained while participating in a softball league of company employees, after working hours, off the employer's premises, can be deemed to arise out of and in the course of employment. Nor do we regard the case of *Becker Roofing Co.* v. *Industrial Com.* 333 Ill. 340, cited and relied upon by defendant, as determinative, since it did not involve an accident suffered by an employee while participating in any activity sponsored by the employer, but concerned only an injury while en route to a company picnic. Inasmuch as employees may not ordinarily recover for injuries sustained while going to and from their place of employment, the liability can be no greater for injuries sustained while going to or from a picnic. A review of the cases in other jurisdictions reveals no uniform rule pertaining to all company league cases and the conclusions vary depending upon the degree of employer organization, supervision,

pressure, actual or inferred, and benefit from the particular recreational activity.

These considerations were articulated by the court in *Holst* v. *New York Stock Exchange,* 252 N.Y. App. Div. 233, 299 N.Y.S. 255, where compensation was allowed an employee injured while playing soccer after working hours on a team recruited from employees of the company, which assisted in organizing the team and allowed time off for games and practice. The court stated at page 234: "We are not required to decide whether the employer was actuated by a belief that the venture was wise because of its advertising features, or because of the improved health and morale of the employees. The maintenance of the teams was a matter of business, not of charity or benevolence. The officials of a corporation may not extend largess from stockholder's money. The claimant was injured while engaged in his employment."

Our opinion would be extended beyond reasonable bounds if all the cases cited by the parties in their scholarly briefs were analyzed and distinguished, for they all have some varying features, therefore reference will be made only to those cases on which reliance has been principally placed by the parties.

Plaintiff has cited *LeBar* v. *Ewald Bros. Dairy,* 217 Minn. 16, where compensation was allowed an employee for injuries sustained while voluntarily participating in a softball game on city park grounds, after working hours, and where the company paid the entrance fee and furnished equipment and uniforms for the team. The court noted that even though the employee, when injured, was not engaged in any actual work of the dairy business and was not required to play in this activity after working hours, nevertheless it was reasoned that from the company's participation in athletics for some ten years there was an inference that they found these contest games desirable for their dairy business, hence the finding of the commission that

the employee's accident arose out of and in the course of his employment could be sustained.

In *Fishman* v. *LaFayette Radio Corp.* 275 N.Y. App. Div. 876, 89 N.Y.S. 2d 563, an award of compensation was affirmed for an employee injured while playing baseball with a team sponsored by the employer, who supplied the uniforms on which the company name appeared, and other equipment, and allowed the players to leave work before the regular quitting time for practice and games with other radio company teams. The case, however, is not determinative since the company allowed the employees time off work for participation, and involved competition between teams within the industry.

In *Fagan* v. *Albany Evening Union Co.* 261 N.Y. App. Div. 861, 24 N.Y.S. 2d 779, a newsboy, attending a company picnic, at which there were games and swimming, drowned, and the court in affirming an award for compensation stated: "It is obvious that the picnic was one of the activities maintained by the employer for the purpose of developing better service and greater interest on the part of the newspaper carriers and for its own ultimate benefit."

In *Kelly* v. *Hackensack Water Co.* 10 N. J. Super. 528, 77 Atl. 2d 467, compensation was allowed for the death of an employee who fell into a ravine while participating in a company outing for which wages were paid. The court commented that the outing had become a custom between employer and employees, as in the instant case, with resulting mutual benefits, and stated: "Employees' interest and concern in respondent was sustained and stimulated by the events at the picnics such as the competition between the two softball teams which respondent maintained in the local league of industrial teams. These activities were beyond question mutually beneficial as it may be assumed respondent well realized."

Plaintiff also cites *Winter* v. *Industrial Accident Com.* (Cal. App. 2d), 276 Pac. 2d 689, where compensation

was allowed a caddy injured while playing golf on a day when caddies were permitted to use the employer's golf course, on the ground that the caddy was engaged in a recreational activity both permitted and encouraged by the employer as an established custom and could, therefore, be deemed an incident of the employment.

In support of the contention that plaintiff's activity did not arise out of and in the course of his employment, defendant has relied upon numerous cases, particularly *Wilson* v. *General Motors Corp.* 298 N.Y. 468, 84 N.E. 2d 781, where the court denied compensation for injuries sustained by an employee participating without pay in a baseball game in a public park after working hours under circumstances where the employer paid for the equipment and shirts bearing the letters "M & A," signifying Motor and Axle Division. The basis of the majority opinion in that four-to-three decision was that employers, who, without prospect of profit or benefit, cooperate to enable employees to engage in athletic recreation on their own time and away from company premises, should not be penalized by having to pay compensation. The court stated, "The slight support thus given by the employer without attendant advertising, or consequent business advantage, should be accepted for what it really was, a gratuitious contribution to its employee's social and recreational life."

Despite some striking elements of similarity, there are material differences between the *Wilson case* and the case at bar, which, under the analysis of the court, would have effected a different result herein. In the instant case, in contrast to the mere designation of "M & A," the trade name of "Jewel Food Stores" appeared on the T-shirts of the team, thereby suggesting some advertising advantage or good-will benefit to the company. Moreover, there was greater company support and encouragement given the teams in the instant case. They were named after the district managers, whose names also appeared on the front

of the T-shirts, and who scheduled the games; publicity was given the games over the company FM radio station and through distribution of the company weekly and monthly news publications; and awards and trophies were tendered by the company executives and a special banquet held by the company.

Furthermore, it should be noted that even on the basis of the facts in the *Wilson case* there was a vigorous dissenting opinion by the three Justices who argued that the employer did derive business benefits from its promotion and encouragement of the activity by the salutary influence upon employer-employee relations, and increased contacts and acquaintanceships among the employees. The dissent pointed out that the money was allocable to employee's welfare, which was an item of "operating expense" for tax purposes, and that if such athletic contests did not benefit the corporation there would be no corporate reason for providing them, but that if they did, then injuries suffered should draw workmen's compensation.

Moreover, the approach suggested in the dissenting opinion was followed by the New York court in *Tedesco v. General Electric Co.* 305 N.Y. 544, 114 N.E. 2d 33, which distinguished the *Wilson case* on the ground that there was greater evidence of employer dominance of the teams in the *Tedesco case,* since the games were conducted under the company's athletic association and were held on company property. However, the court, in allowing compensation, primarily stressed the fact that the employer received benefit from the softball competition among the company employees, and stated: "However beneficient to the employees such plan may be, its primary motivation is undoubtedly the furtherance of employee relations and the building of an *esprit de corps* and good will which redound to the benefit of the employer."

Defendant has also cited *Auerbach Co.* v. *Industrial Com.* 113 Utah 347, 195 Pac. 2d 245, where an employee

cashier, injured in an automobile accident while on a trip to play basketball on a team sponsored by the company, was denied compensation. It appears in that case that all the players were not employees of the company, and the company name was not on the uniforms, although the company paid for them as well as all travel expenses. The court, however, predicated its denial of compensation upon facts not involved in the instant case, such as the haphazard relationship between the company and the team, which existed independently of the company and was organized before it had any connection with the company; and the fact that there was no regular schedule of games, nor any requirement that the team act under the control of a manager employed by the company.

Defendant has cited numerous other cases with both analogous and distinguishable facts, in which compensation was denied. The essential inquiry by each court appears to be whether the employer could be deemed to sustain a direct benefit from the recreational activity so that it could be regarded as an incident of the employment.

In the instant case, by defendant's own admission, the avowed objectives of the league were to stimulate good will and an *esprit de corps* among the employees. While this recreational activity was not a measurable bonus to the employees, it was a more subtle advantage of employment in that it afforded employees an opportunity of socializing both with each other and with the district manager and other executives through participation in this sport. The consequent improvement of employee-employer relations through this activity was a significant if not tangible benefit to the employer.

Furthermore, while defendant denies that it sought or secured any advertising benefits from the fact that the name "Jewel Food Stores" appeared on the T-shirts of the teams, since the T-shirts were furnished at the employee's request, it is indisputable that this emblem did put defend-

ant's trade name before the public under circumstances which tended to establish good will, and that defendant ordinarily spent considerable sums to accomplish that same result through other media. The fact that even greater advertising benefits would have been derived if the teams had participated in the Industrial League, as in some of the cases cited, does not detract from the benefits derived by defendant from this limited competition. Hence, defendant's mere denial that it obtained advertising benefits in order to avoid liability cannot be deemed conclusive in the light of the reasonable inferences from the circumstances.

Nor can this court agree with defendant's contention that since plaintiff's participation in the activity was voluntary and after working hours, and off the employer's premises, it was *per se* outside the course of his employment. On the contrary, there was evidence that the company was closely integrated with the organization and operations of the teams. The company not only encouraged the activity by publicizing it over its FM radio station, and in its weekly and monthly publications distributed to the employees, and by the presentation of trophies by company executives, but in addition there were even more compelling grounds for participation. The subtle pressures from the fact that the teams were each named after the district managers, who recommend promotions within the stores in their respective districts, and the fact that the district manager came out to the games, and appointed the captain who selected the men on each team, cannot be obscured. This is patent from plaintiff's testimony that he felt foolish when he refused at first to participate on the team of "Jeffrie's Gems" when asked by Woodruf, who had been appointed as manager-captain by Jeffreys, the district manager.

Admittedly the employee would not lose his job for refusal to be on the team; however, he might be concerned about his acceptance in the company, particularly with the

district manager, if he rejected the invitation to play on the district manager's team. Thus, although plaintiff was not hired to play softball, it is not an unreasonable inference that participation with the "Jeffrie's Gems" could legitimately be regarded as an incident of plaintiff's employment.

As defendant has quite properly argued, in accordance with established precedent it is not the province of this court to extend by judicial legislation the terms of the Workmen's Compensation Act so as to convert it into a system of health insurance. However, this court cannot adjudicate rights in a vacuum, and predicate decisions on legal concepts divorced from practical realities. As stated in *Juergen Bros. Co.* v. *Industrial Com.* 290 Ill. 420, such laws should be given a practical construction and application. Therefore, inasmuch as there was evidence in the record before the Industrial Commission from which it could be reasonably inferred that plaintiff's participation in the defendant company league under the circumstances was an incident of his employment, the injuries he sustained while playing in the particular game could properly be found to arise out of and in the course of his employment.

It was error, therefore, for the superior court to set aside the award entered by the Industrial Commission, and the judgment of the superior court is reversed and the cause remanded, with directions to reinstate the award.

*Reversed and remanded, with directions.*

Mr. JUSTICE MAXWELL, dissenting:

It is well settled under our Workmen's Compensation Act that a claimant under the act must prove by direct and positive evidence or by evidence from which the inference can be fairly and reasonably drawn that the accidental injury of which complaint is made arose out of and in the course of the injured person's employment. (*Le Tourneau, Inc.* v. *Industrial Com.* 396 Ill. 435; *Jolly* v. *Industrial*

*Com.* 341 Ill. 46; *Standard Oil Co.* v. *Industrial Com.* 339 Ill. 252.) There being no direct and positive evidence that the accident arose out of and in the course of employment, it is necessary to consider the evidence to determine whether such an inference can be fairly drawn therefrom. The burden rests upon the claimant to furnish evidence from which the inference can be logically drawn that the injury arose out of and in the course of his employment. *Ohio Building Safety Vault Co.* v. *Industrial Board,* 277 Ill. 96.

There are, of course, many instances where recreation may be so bound up with employment that a resulting injury will be deemed one arising out of and in course of such employment. In such cases there must be evidence that the activitiy in which the particular employee had engaged not only was encouraged by the employer, not only was directly aimed at promoting the employee's skill in the discharge of the very duties of employment, but was of unquestioned "benefit" to the employer. On the same footing, too, stand those cases wherein the employer requircs the employee to participate in the recreational activity or subsidizes it in order to derive for himself a financial return or some substantial beneficial publicity.

In the instant case the record makes plain that the ball games were out of hours, off the premises, and personal diversions of the men, and were not only optional with the employees but were exclusively for their own recreation and indulgence, without resultant business advantage to the employer. The games were neither initiated nor sponsored by the employer, were in no way connected with the employer's affairs, and in no manner subject to its control. Even if the employer had so desired it could not have halted the ball playing or changed the program in any way. In other words, totally lacking is any basis for an inference that it controlled the activity or sought to compel or induce any employee to participate in it. On the contrary, indication almost positive that the activity was separate and

removed from the employment is found in the fact that the employer objected to and discouraged intracompany teams from joining the Industrial Soft Ball League and would not provide funds or other assistance for participation in such a league.

Neither the circumstances that the management gave its permission to employees to take part in the sport, nor even that it cooperated in the program, can be said to spell out compulsion or restraint, and no evidence on that score is supplied by a meat cutter in one store remarking to a stock clerk of another store, "Don't you want to play any more? Haven't you any spirit?"

The record, we believe, is lacking in any material showing of direct advertising benefits to defendant *via* the soft ball games. The name "Jewel Food Stores" appeared on the back of the T-shirts. However, it appears from the testimony that while such T-shirts were furnished by defendant, the players were not required to wear them; many of the players furnished their own without the company emblem thereon and one team raised enough money by the efforts of its members to outfit themselves with complete uniforms which did not carry the company insignia. No expense for providing equipment or materials for soft ball teams was chargeable to the sales or advertising department of the defendant; there were no facilities provided for the public to witness the games other than provided for any sand lot game; the public was not given any notice of games or even the so-called championship game; the information about the games, *Jewel News Flashes, etc.,* was only to the internal organization; and information as to the time and place of playing of games was given over the radio in the stores on the morning the games were to be played during a period from 8:45 to 9:00 A.M. when the stores were not open to the public, and included other news of interest only to employees, such as birthdays, weddings, anniversaries, social events and news requested by the union for em-

ployees. The weekly and monthly publications distributed to the employees had the same general format as the internal radio program. Thus, we look in vain for evidence of any business advantage or benefit occurring to defendant from the employees' participation in the contests. Too tenuous and ephemeral is the possibility that such participation might perhaps indirectly benefit the employer by improving the employees' morale or health or by fostering employee good will.

Personal activities of employees, unrelated to the employment, remote from the place of work and its risk, not compelled or controlled by the employer, yielding it neither advantage nor benefit are not within the compass of the Workmen's Compensation Act. Nor is it of any operative consequence that the employer acquiesced in or contributed some financial aid to such activity. As mentioned in the majority opinion herein "the slight support thus given by the employer without attendant advertising or consequent business advantage, should be accepted for what it really was, a gratuitous contribution to its employees' social and recreational life."

In the case such as the one before us, the granting of a compensation award not only does violence to the letter of the statute but offends against its. spirit by penalizing employers, who, without prospect of profit or benefit, co-operate in enabling their employees to engage in social or athletic recreation on their own time and away from the company premises. As the court said in *Industrial Commission* v. *Murphy*, 102 Colo. 62, 76 Pac. 2d 742, 115 A.L.R. 990, "It may be regrettable that this young man cannot be compensated under the terms of the act, but its provisions must not be pushed beyond the limits of their purpose, nor its funds diverted to those not clearly entitled thereto and the object of their creation thus frustrated. Kindness to one may well be cruelty to many. Allowance of this claim could but serve as a warning to employers that they may

concern themselves with the social life and recreation of their men, or permit their officers to do so or contribute to efforts to lighten life, only under penalty of liability for every accident and injury arising from such activities, however remote from the employment itself."

It is my opinion that the evidence submitted by claimant is not such that an inference can be logically drawn therefrom that the injury arose out of and in the course of his employment. Permitting claimant to recover upon the record of this case is to predicate such recovery upon subtle inferences, conjectures and speculations contrary to the weight of the evidence and in contravention of principles of law long established by many prior decisions of this court.

I am compelled to the conclusion that claimant, as a matter of law, did not establish that the injuries sustained while playing soft ball, after his hours of employment and off his employer's premises where the duties of his employment were performed, and in a public park or playground, voluntarily and for which he was not hired and was not paid, arose out of and in the course of his employment within the provisions of the Workmen's Compensation Act.