**Kelly Arlin BLACK, Plaintiff,**

v.

**McDONALD'S OF LAYTON and/or State Insurance Fund, Defendants.**

No. 860296.

Supreme Court of Utah.

Feb. 6, 1987.

Wendell E. Bennett, Salt Lake City, for plaintiff.

James R. Black, Laurie A. Haynie, Salt Lake City, for defendants.

31. *Redevelopment Agency v. Mitsui Inv. Inc.,* 522 P.2d 1370, 1374 & n. 12 (Utah 1974).

PER CURIAM:

Kelly Arlin Black has petitioned this Court for a review of the final order of the Industrial Commission denying him benefits under section 35–1–45 of Utah's Workmen's Compensation Act on the ground that Black's injury did not arise out of or in the course of his employment.

In the summer of 1985, Black was a high school student who worked as a crew trainer for McDonald's of Layton, a licensee under franchise with the McDonald Corporation. McDonald's of Layton was one of several McDonald restaurants that had joined a softball league comprised of McDonald stores throughout the Salt Lake, Tooele, and Ogden areas. All stores participated on a voluntary basis.

In 1983, John Parisi, an operations consultant for the McDonald Corporation, was approached by several employees of the corporate-owned stores who were interested in playing softball. Parisi had been involved in setting up softball leagues when he lived in Los Angeles and thought he could be helpful. Inasmuch as the season was almost over, those interested played in only one McDonald tournament. In 1984, a committee was made up of representatives from each store which established and sent out the rules and regulations of the games. Divisions were formed so that employees would not have to travel too far. Each team played twelve games and one single elimination tournament. Players had to be McDonald employees. McDonald Corporation contributed nothing to the games, but the participating stores contributed approximately thirty dollars apiece to the league at the beginning of each season for the purchase of scorebooks, softballs, and trophies. The money remaining after those purchases was divided seventy-five percent to the championship team and twenty-five percent to the runner-up team. The prize money went to the store, not to the individual players. The total prize money for 1985 was $120.

The 1985 games were played from June to August and were scheduled for each Tuesday and Thursday morning. Mc-Donald's of Layton employees were informed of the games through a sign-up sheet on the employee bulletin board and by word of mouth by their fellow employees. New employees also learned of the games when they attended orientation meetings. Employee participation was completely voluntary, and employees wishing to play had to find work replacements or request time off without pay. No preference in scheduling was given to players. Employees had to furnish and pay for their own transportation. Each home team was responsible for reserving a ballpark, and games were normally played on municipal softball diamonds which were free of charge.

McDonald's of Layton provided the scorebook and softballs at the home games. Employees furnished their own mitts, bats, and other equipment. During the 1985 season, McDonald's of Layton players were given numbered t-shirts without any McDonald logos or emblems. The games were not advertised by McDonald's of Layton, nor was the softball league designed to promote McDonald's in any way. McDonald's crew employee handbook advised employees of their opportunity to join activities. Relevant language in the text reads: "This type of extracurricular activities is fun and provides you with an opportunity to have a good time and get to know your fellow employees better." Parisi identified the purpose of the various activities as "more of a social thing, that they would feel as a team outside, they can feel as a team inside." One way to accomplish that purpose in Parisi's words was to restrict participation to employees only in order to maintain the social concept and the camaraderie between the employees at the game. Parisi had also given the team managers release forms to be signed by the players, but the record is not clear which, if any, of the employees signed them.

On June 13, 1985, Black and four other McDonald's of Layton employees were on their way to a softball game against the employees from the North Ogden store,

when their car was hit by a truck and Black and others were injured.

In his statement of issues presented on appeal, Black asks that we distinguish our decision rendered in *Auerbach Co. v. Industrial Commission,* 113 Utah 347, 195 P.2d 245 (1948), or that we overrule it because it no longer stands for the appropriate rule of law. McDonald's of Layton counters that that decision is still valid and binding precedent for the instant case and that under both Utah law and other authorities, elements to be considered in deciding this type of injury mandate that the Industrial Commission's ruling be upheld. For the reasons stated below, we agree with McDonald's of Layton and affirm the ruling of the Board of Review.

■ The sole issue before us is whether Black was in the course of his employment[1] when he was traveling to a recreational activity with fellow employees and was injured in a collision with another automobile. To be embraced within the ambit of "course of employment," the injury must be received while the employee is carrying on the work which he is called upon to perform or doing some act incidental thereto. *Nadeau v. Town of South Berwick,* 412 A.2d 392 (Me.1980). It must occur within the period of employment, at a place or area where the employee may reasonably be, and while the employee is engaged in an activity at least incidental to his employment. *Ski World, Inc. v. Fife,* 489 N.E.2d 72 (Ind.App.1986). The activity will be considered incidental to the employee's employment if it advances, directly or indirectly, his employer's interests. Id. at 75.

The resolution of the issue whether an injury received during a recreational activity is compensable depends on the facts and circumstances of the individual case. *State Tax Commission v. Industrial Commission,* 685 P.2d 1051 (Utah 1984); *Kinne v. Industrial Commission,* 609 P.2d 926

(Utah 1980). Our inquiry must focus on the relationship between the employment and the recreational activity and on the question whether the activity itself arose out of or in the course of the employment. *Fischer v. Industrial Commission of Illinois,* 142 Ill.App.3d 298, 96 Ill.Dec. 873, 491 N.E.2d 1333 (1986). We approach that task under well-established standards of review. This Court pays great deference to the Commission's findings of facts and upholds them as conclusive and binding so long as they are supported by competent and substantial evidence in the record. *Northwest Foods, Ltd. v. Board of Review,* 731 P.2d 470 (Utah 1986). The Commission's interpretation of the court-fashioned rule defining course of employment requires the weighing of several factors to arrive at a conclusion on the ultimate facts. This Court's review of that construction is limited to determining whether the Commission's application of the law to the facts before it was reasonable and rational. *State Tax Commission,* 685 P.2d at 1052.

As a point of departure in his exhaustive findings, the administrative law judge employed four tests, delineated in 1A A. Larson, *The Law of Workmen's Compensation* § 22.24 (1985), to determine whether Black's injury was compensable as having occurred during the course of employment. The essence of those factors may be condensed as follows:

1. Time and place. Recreational games scheduled during working hours on company premises are usually found to be work-related. Even where only one of these elements is present, "the case has made a strong start." *Id.* at § 22.24(b). Where games are scheduled off premises and after hours, the burden of proving work connection falls heavily on the other three factors set out immediately below. Time and place are the decisive elements in determining compensability.

injury occurred, ... shall be paid compensation for loss sustained on account of the injury or death...."

---

**1.** U.C.A., 1953, § 35–1–45 (1986 Cum.Supp.) reads in pertinent part: "Every employee ... who is injured ... by accident arising out of or in the course of his employment, wherever such

2. Degree of employer initiative, promotion, and sponsorship. When sufficiently present, these elements clearly point toward sufficient control to identify the activity with the employment. Though not decisive, presence of these elements tends to support compensability.

3. Financial support and equipment furnished by employer. Standing alone, these elements are not sufficient to make the recreational activity work related, but will weigh in the aggregate.

4. Employer benefit. This factor, according to Larson, plays a supporting rather than an independently decisive role as well. Intangible values, such as increased work efficiency and morale, are insufficient to link the activity to the employment.

Applying those four factors to the instant facts, the administrative law judge concluded that Black did not sustain a compensable industrial injury during the course of his employment with McDonald's of Layton.

We have carefully reviewed the cases cited by both parties in their efforts to support their respective sides of the argument. Without dwelling on the distinguishing factors between those cases where benefits were denied and those where benefits were upheld or granted, we endorse Larson's observation that awards and denials usually result from the different "mix" in the fact situation, *id.* at § 22.24, and that in some cases "a slight strengthening of the facts could easily have changed the narrow margin of defeat into one of success, while a slight weakening of the facts would have left almost nothing on which to found a claim at all." *Id.* at § 22.24(f) (citing *Wilson v. General Motors Corp.*, 298 N.Y. 468, 84 N.E.2d 781 (1949)).

Our decision in *Auerbach Co. v. Industrial Commission* is a case in point. Rela Wardle was employed as a cashier at Auerbach's. She was a basketball player on a team sponsored by Auerbach's as part of its public relations and advertising campaign. Wardle was paid for transportation to games. Employees of Auerbach's were not hired for their ability to play, nor was team membership restricted to employees. Wardle was involved in a car accident on the way to games in Provo. The Industrial Commission found that Wardle was injured in the course of employment. This Court reversed, limiting the issues to the questions of whether Wardle's participation in the basketball team was a duty of her employment and whether Auerbach's had the right to control her performance on the basketball team. Justice Wolfe, in a concurring opinion, addressed the plaintiff's argument that the injury was compensable because Auerbach's gave its financial support and received benefits in the form of valuable advertising and promotion of good will. Justice Wolfe found that where a player played voluntarily, during off-duty hours, the relationship of sponsor-player was not in the ordinary instance an employer-employee relationship in spite of the fact that financial support by and good will to the employer resulted from the permissive activity.

We do not believe that our holding in *Auerbach* should be overruled because, as Black contends, it no longer stands for the appropriate rule of law. The rationale then is still good today and reflected in case law emanating from this and other jurisdictions. *See generally Fischer v. Industrial Commission of Illinois*, 491 N.E.2d at 1337 (examining the factors of employer benefits, initiative, and financial sponsorship); *Dowson v. Borough of Lodi*, 200 N.J.Super. 116, 490 A.2d 374 (1985) (focusing on voluntary participation and incident of employment); *Cotton v. Worthington Corp.*, 192 N.J.Super. 467, 471 A.2d 56 (1984) (denying benefits on ground of lack of control and of incident and condition of employment);[2] *Rose v. Argonaut Insur-*

---

**2.** N.J.Stat.Ann. § 34:15–7 (West 1959) (amended 1980), unlike Utah's section 35–1–45, has specific language excluding injuries resulting from recreational or social activities unless they are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale. See also Nev.Rev. Stat. § 616.110.1 (1986); Ill.Ann.Stat. ch. 48, ¶ 138.11 (Smith-Hurd 1986) (amended 1980); and Cal.Lab.Code § 3600(a)(8) (West 1971)

*ance Companies,* 77 Or.App. 167, 711 P.2d 218 (1985) (denying benefits where employee was not hired for ability to play softball and participation was voluntary and without pay); *Kemp's Case,* 386 Mass. 730, 437 N.E.2d 526 (1982) (holding off-premise softball game and mere incidental support by and benefit to employer insufficient to bring injury within scope of employment); *Looser v. Industrial Commission,* 9 Utah 2d 81, 337 P.2d 965 (1959) (denying benefits to race car driver where employer did not control activity). *But cf. Ski World, Inc. v. Fife, supra; Nadeau v. Town of South Berwick, supra; Illinois Bell Telephone Co. v. Industrial Commission,* 61 Ill.2d 139, 334 N.E.2d 136 (1975); *Jewel Tea Co. v. Industrial Commission,* 6 Ill.2d 304, 128 N.E.2d 699 (1955).

██ Turning to the case under review, we find that the administrative law judge's application of the legal tests under Larson to the facts before him were well within the realm of reasonableness and rationality. McDonald's of Layton employees played their softball games away from the premises on public playgrounds during off hours. Players wanting to play during work hours had to find substitutes to take their place or arrange their schedules ahead of time. Players were not paid for time spent at softball games. Although Parisi was an employee of McDonald Corporation, the evidence was clear that his sponsorship of the teams was his individual decision, albeit condoned by the corporation. Financial support of the softball team by McDonald's of Layton was negligible. Thirty dollars was pooled for the purchase of scorebooks, softballs, and trophies, and some t-shirts were furnished. McDonald's of Layton received no benefit from those games beyond the improved morale and enhanced camaraderie among some of its employees, although it did have the potential of winning the pool of unspent funds. However, this potential benefit is not significant enough to tip the bal-

ance against the ruling below. The t-shirts worn by the employees carried no McDonald's logos or emblems. Games were not published except on employee bulletin boards and were in no way designed to advertise the products sold by McDonald's. Under those circumstances, we hold that the administrative law judge properly found that Black did not sustain his injury in the course of his employment.

The order is affirmed.

---

(amended 1978), where state legislatures expressly narrowed recovery for injuries sustained in recreational activities to those instances where employer's control is shown either by remuneration or direction of employee.