(No. 41100.—

KEYSTONE STEEL & WIRE COMPANY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(Howard F. Boers, Jr., Appellee.)

*Opinion filed June 21, 1968.*

SWAIN, JOHNSON & GARD, of Peoria, (TIM SWAIN II, of counsel,) for appellant.

GREENBERG, JANSSEN & BECKER, of Peoria, (JAY H. JANSSEN, of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Howard F. Boers, Jr., an employee of Keystone Steel & Wire Company, broke a leg while playing softball at a baseball diamond adjoining the plant. He filed a claim for workmen's compensation, and an award by the Industrial Commission was confirmed by the circuit court of Peoria County. The employer appeals, contending the injury did not arise out of his employment.

The facts are essentially undisputed. The claimant, a steel-mill recorder, participated in organized recreational activities commonly engaged in by other Keystone employees. On August 26, 1964, he completed his day's work and punched out, and that evening played in a softball game for the Billet Yard team against the Shipping Department team in an interdepartmental contest. As he was sliding into third base he severely fractured his right leg.

Softball games were among the activities sponsored by the Keystone Employee Activity Association, a corporation run by Keystone employees for recreational purposes. Financial support was derived from the proceeds of employee-

patronized canteens located throughout the plant, and the association paid for such things as baseball equipment, backstops, bases, services of umpires, and a trophy awarded at the end of the season. In 1964, there were 9 or 10 active teams, none of which exceeded 15 players. The employees made up their own game schedule, and spectators largely consisted of the families of participants.

Results of the games were published in a plant newspaper and schedules were posted on bulletin boards throughout the plant. Foremen were authorized to grant permission to a player to trade shifts with another so as to be free to play softball. The company's director of safety, among his other duties, acted as advisor to the association. The ball diamond was located on land managed and controlled by the company, which had posted a sign reading "Unauthorized Personnel Keep Out." The company had authorized the playing of softball league games on the property.

To sustain the award claimant relies principally on *Jewel Tea Co.* v. *Industrial Com.,* 6 Ill.2d 304, where injuries held compensable were likewise incurred while participating in a league softball game. In that case, however, the athletics were sponsored by the employer. Shirts were worn bearing the company name and emblem, the games were held at public parks, and publicity was given to them by the company's internal radio and in company publications. We found that control and supervision by the company, and the advertising advantage or good will it derived, were sufficient to justify treating the claimant's activity as an incident to his employment.

Also relied upon is the recent decision of this court in *Lybrand, Ross Bros. & Montgomery* v. *Industrial Com.,* 36 Ill.2d 410. In that case it was held that going home from an employer's annual golf outing was sufficiently incidental to the work of its personnel manager to make his death in an automobile accident compensable under the Act. It was pointed out that since the outing was held on a regu-

lar working day, when employees not attending were not excused from work, there was substantial employer "compulsion," that the employer sponsored, arranged and financed the affair, and that the employer can be assumed to have benefited from improved relations among both employees and past employees, some of whom were then working for people with whom the employer did business.

We do not think the scope of employment in the case at bar can be stretched to include the diversion in which the claimant was engaged when he was hurt. Unlike the employer in the *Jewel Tea* case the company in the case at bar exerted no pressure or encouragement for participation and derived no advertising benefit from the games. Moreover the company did not sponsor the event, nor was it held during regular working hours, as the golf outing was in the *Lybrand* case. The ball game was solely for the recreation and personal diversion of the employees, without any substantial business advantage to the company. Whatever improvement may have resulted in morale or employee-employer relations is far too tenuous to provide a basis for saying the injury was sustained either out of or in the course of the employment.

Nor is it of importance on this issue that the company acquiesced in the activities, provided the use of its land for the ball diamond, permitted the canteen machines to be located in the plant, and allowed employees to trade shifts in order to play. All the company did, in essence, is to cooperate in enabling employees to engage in social and recreational activities on their own time. To hold that such gratuitous contributions entail liability without fault for injuries at play penalizes the mere providing of benefits and will most certainly tend to discourage it. Facts such as those in this case are totally insufficient to convert this recreational activity into an incident of employment. (*Hydro-Line Manufacturing Co.* v. *Industrial Com.,* 15 Ill.2d 156.) However different the views may have be-

come after the event, it is hardly likely that either the company, or the employee, or anyone else engaged in or watching the game then thought that it was part of the employment or that the claimant was on the job at the time. He was not hired as a ballplayer but as a factory worker, and his hours of work having ended for the day the only reasonable inference under the circumstances is that he was no longer in the course of his employment.

If it is socially desirable that employers be required to compensate people for injuries in such a case as this, the appropriate course is by amendment of the statute, not by judicial· interpretation. As in any area where ordinary language is given an unnatural or tortured meaning to reach a decision thought desirable, a strained construction of an act designed only to compensate for injuries at work would have unfortunate consequences far beyond the immediate issues.

We find as a matter of law that the claimant's injury did not arise out of and in the course of his employment. The judgment of the circuit court must accordingly be reversed and the award set aside.

*Judgment reversed; award set aside.*