(No. 44342.—

VIOLET BURMEISTER *et al.*, Appellees, v. THE INDUS-
TRIAL COMMISSION *et al.*—(Belding Engineering
Company, Appellant.)

*Opinion filed May 22, 1972.*

GOLDENHERSH, WARD, and DAVIS, JJ., dissenting.

KLOHR, BRAUN, LYNCH & SMITH, of Chicago
(THOMAS P. SMITH, of counsel), for appellant.

FRANK S. KANELOS and CHARLES WOLFF, both
of Chicago, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the
opinion of the court:

Petitioners, who are the widow and surviving children
of Eugene Burmeister, were awarded compensation for his
death by an arbitrator for the Industrial Commission. On

review, the Industrial Commission set aside the award upon its finding that petitioners had not proved that Burmeister's fatal injuries arose out of and in the course of his employment with respondent, Belding Engineering Company. On *certiorari* the circuit court of Du Page County held that the Industrial Commission erred as a matter of law, set aside the Commission's decision, and ordered that the award of the arbitrator be reinstated. Respondent appeals.

On December 23, 1965, the deceased had been employed by respondent for one week as a salesman-trainee. December 23, a Thursday, was the final day of work before respondent's offices closed for the Christmas holidays. When the offices closed at 5:30 P.M. that day, the deceased was in the office of the company's president, Meric Belding, with Wilbert Haemker, the company's secretary-treasurer, and John Carlstedt, vice president. Either Belding or Haemker suggested that they all go out to have a drink and something to eat on the way home.

The four men proceeded by separate cars to Ray Robert's Steak House, approximately a ten-minute drive from respondent's offices. The restaurant, which had been used by Belding personnel on previous occasions for lunches and dinners, was apparently chosen that night due to its proximity to the respondent's plant and the fact that it was on the way home for Belding and Carlstedt. No business was discussed over drinks and dinner, since Belding had an unwritten rule not to do so after work in the evenings. The time was spent discussing football, the coming holidays, and general conversation of that type. Belding acknowledged that the occasion had afforded him an opportunity to get to know Burmeister on a social basis.

While at the restaurant, the deceased phoned his wife to tell her he would not be home for dinner. Haemker, a family friend, also talked to her briefly, and they exchanged holiday greetings. Neither man said anything to

indicate that the deceased planned to return to the office after dinner.

Belding, Haemker and Carlstedt could not recall who paid for the dinner and drinks. All agreed it was not charged to the business but was either divided equally or paid for by one of them.

Burmeister was the first to leave the restaurant at about 8:00 P.M. It was a rainy, overcast night, and driving conditions were poor. At about 9:30 P.M. the Du Page County Sheriff's office received notice of a traffic accident at a location approximately three miles from the respondent's office on the route from the restaurant to the deceased's home. The deceased was found dead in his car, the apparent victim of a hit and run collision. Haemker, who left the restaurant after the deceased and drove directly home, testified that he passed the site of the accident at about 8:30 P.M. but saw no signs of any collision.

Edward Zahoura, the deceased's brother-in-law, testified that at the deceased's funeral he had talked to Haemker who told him that the deceased "might" have returned to the office after dinner to get some material for a sales presentation. Haemker could not recall any such conversation. There was testimony that the deceased had no key to the office and that the watchman, who was the last person to be at the office in the evening, routinely left about one-half hour after everyone else departed. None of the men who were with Burmeister that evening could recall any discussion about his working on a sales presentation, and there was nothing found among his effects that could be considered materials for a sales presentation.

As a general rule accidental injuries suffered by an employee while going to or from his employment do not arise out of or in the course of his employment. *(Quarant v. Industrial Com. (1967), 38 Ill.2d 490; Thomas Reed & Son v. Industrial Com. (1967), 36 Ill.2d 612.)* An

exception to the rule may be found when the injury occurs during travel to or from other than the normal place of employment undertaken incidentally to the employment and for the accommodation of the employer. *(Lybrand, Ross Bros. and Montgomery v. Industrial Com. (1967), 36 Ill.2d 410; Urban v. Industrial Com. (1966), 34 Ill.2d 159; Sjostrom v. Sproule (1965), 33 Ill.2d 40.)* Petitioners contend that the case before us falls within the exception. They argue that Belding's testimony shows that the respondent expected to derive substantial benefit from his and the other executives getting to know the deceased better over drinks and dinner at Ray Robert's Steak House. They further contend that an invitation to an employee who had been with the company for one week to accompany the president, vice president and secretary-treasurer to dinner constituted substantial employer compulsion to join them, and the fact that no business may have been discussed did not diminish either the benefit derived by the employer or the degree of employer compulsion to attend. In support of these contentions, petitioners have placed substantial reliance on previous decisions of this court in *Lybrand* and in *Jewel Tea Co. v. Industrial Com. (1955), 6 Ill.2d 304.*

In *Lybrand* we sustained an award of compensation when an employee was killed in an automobile accident while returning home from the employer's annual golf outing. The outing was sponsored, organized, supervised, controlled and paid for by the employer. It took place on a regular working day, and there was substantial employer compulsion for employees to attend. Significant benefit to the employer was found not only in improved employer-employee relations, but also in the fact that an appreciable number of those in attendance worked for concerns with whom the employer was presently doing business.

In the *Jewel Tea* case, an employee was injured while participating in an employer sponsored softball game. The employer had organized a league of fifteen teams, each of

which was under the direction of captains appointed by each of the employer's district managers. The injured employee had been prevailed upon to join his district team in the year he was injured. The games and their results were publicized by the employer in various ways. We there sustained an award of compensation due to the "significant if not tangible" benefit of improved employer-employee relations, the advertising benefits to ·the employer, and the pressures on employees to participate.

It is evident that the record before us does not establish the degree of employer involvement present in the *Lybrand* and *Jewel Tea* cases. In those cases, there was a showing of substantial employer compulsion for the injured employee to attend an event which was sponsored, supervised and paid for by the employer and which resulted in ascertainable and significant benefits to the employer. Those elements have not been shown to exist here. The impromptu gathering at Ray Robert's Steak House after the closing of respondent's offices for the holidays appears to have been an essentially nonbusiness-related social affair. It was clearly not paid for by the employer. No business was discussed, and the only possible business-related aspect of the evening was the opportunity it afforded the officers of the company to get to know the deceased better on a social basis. However, it is apparent that the get-together was not planned for that purpose, and the fact that the evening may have incidentally resulted in the officers becoming better acquainted with the deceased is, under all of the circumstances here, too tenuous a basis on which to support an award. While it may be concluded that decedent may not have felt entirely free to decline the suggestion that he join the others for dinner, that circumstance alone is not sufficient to render the later, unrelated death compensable. The accident occurred after the dinner had ended and while decedent was driving home over the route which apparently was

normally used by him when returning home from work. The record is completely devoid of any evidence as to where the defendant was or what occurred during the period of approximately one and one-half hours from the time he left the restaurant and the time the accident was reported. We will not indulge in conjecture as to these matters. *(Thomas Reed & Son v. Industrial Com. (1967), 36 Ill.2d 612.)* There is nothing in the record to support the testimony of the deceased's brother-in-law that the deceased may have returned to the office after dinner to get some material for a sales presentation. To the contrary, the proof established that the offices were closed and locked up for the holidays, and the deceased had no key to get in.

In our opinion, the Industrial Commission's determination that the fatal injuries suffered by the deceased did not arise out of and in the course of his employment with respondent was not contrary to the manifest weight of the evidence. Accordingly, we conclude that the circuit court of Du Page County erred in reversing the Commission's decision.

The judgment of the circuit court of Du Page County is reversed, and the decision of the Industrial Commission is reinstated.

*Judgment reversed; decision*
*of Commission reinstated.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent from the majority opinion and would affirm the judgment of the circuit court.

The majority has drawn distinctions between this case and *Lybrand* and *Jewel Tea* which upon examination of the opinions in those cases prove to be distinctions without differences. In *Lybrand,* the majority says, there was "substantial employer compulsion" for employees to attend the company picnic. The opinion in *Lybrand* recites

that the employees were encouraged to attend, were paid whether they worked or attended and were not excused from work if they did not attend.

Meric Belding, respondent's president, testified that he asked deceased to join him, Haemker and Carlstedt for dinner and drinks and that he considered it important to know his employees in a "social way" and this gave him the opportunity to get to know Burmeister better. The only reason business was not discussed during dinner is that Meric Belding had an "unwritten rule" against doing so after work in the evenings. Compulsion and the ability to withstand it are of course relative and it is difficult to envision the degree of temerity which Burmeister would be required to exercise to refuse an invitation to have drinks and dinner with the president, vice-president and secretary-treasurer of his employer of one week.

In so far as the employer in *Jewel Tea* received benefit I perceive little if any distinction between the statement of Jewel Tea's personnel chief that "We felt that anything that drew Jewel people together in a social way promoted cooperation and furthered the joint effort of all of us," and Belding's expressed intent to get to know the deceased better in a social informal way because he felt it was important to know his employees in that manner. The record does not support the majority's statement that the "get-together was not planned" for the purpose of affording the officers the opportunity to get to know Burmeister better. The testimony clearly indicates that even though perhaps not "planned" in the sense that the arrangements were not made in advance, there is no explanation for inviting Burmeister other than to "get to know him better," a result which the employer deemed beneficial to its interests.

The majority's statement that Burmeister, an employee of one week, "may not have felt entirely free to decline the suggestion" that he have dinner with the three

principal officers of his company is certainly a euphemistic description of obvious corporate compulsion.

I do not agree with the circuit court that the Industrial Commission erred as a matter of law. An examination of the record, however, shows that the arbitrator for the Industrial Commission reached the correct result and the Commission's decision, based on the record made before the arbitrator, and reached without hearing additional testimony, is against the manifest weight of the evidence.

WARD and DAVIS, JJ., join in this dissent.