(No. 46568

ILLINOIS BELL TELEPHONE COMPANY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Otis D. White, Appellant.)

*Opinion filed June 2, 1975.—Rehearing denied September 24, 1975.*

KLUCZYNSKI, J., dissenting.

Aaron P. Brill, of Brill & Levinson, of Chicago (Frank P. Kronenberg, of Chicago, of counsel), for appellant.

Hackbert, Rooks, Pitts, Fullagar and Poust, of Chicago (Douglas F. Stevenson, Daniel P. Socha, and William D. Murray, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The claimant, Otis White, fractured his ankle on August 12, 1970, while playing softball in the Illinois Bell Telephone Men's Softball League. An arbitrator of the Industrial Commission found that he sustained injuries arising out of and in the course of his employment and entered an award for temporary total incapacity, 50% permanent loss of the use of his left foot and medical expenses under the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.8(a), (b), (e)). On review the Commission, after hearing additional testimony, confirmed the award. However, on *certiorari* the circuit court of Cook County reversed the award, holding that the claimant's injury did not arise out of and in the course of his employment. The claimant has appealed here under Rule 302(a) (50 Ill.2d R. 302(a)), contending that the circuit court's action was contrary to law and against the manifest weight of the evidence.

There is no dispute as to the nature and extend of the claimant's injuries.

In the summer of 1970 the respondent, Illinois Bell Telephone Company (Illinois Bell), as had been its practice for many years, sponsored an intracompany men's league. The league was composed of 38 teams divided into north, south and central divisions. All players, under a league bylaw, were required to be employees of Illinois Bell, or its "long lines," *i.e.*, employees of American Telephone & Telegraph Co. Illinois Bell paid the costs of operating the league, which included the cost of uniforms, softballs, bats, bases and umpire fees. The league schedule and notices of coming games were posted on company bulletin

boards. The company newspaper of Illinois Bell published stories of games, dates of the league meetings and carried photographs of the champion team and its trophies. All games were played in public parks.

The league was directed by an executive committee of employees composed of a league president, vice-president, secretary-treasurer and three divisional presidents. The executive committee members were elected to their posts by the team managers, who in turn were elected by their team members. The executive committee and the team managers met before each season to draft bylaws and draw the season's schedule.

Otis White testified before the arbitrator that he had worked as a telephone installation and repair man for Illinois Bell at its South Chicago office for about a year prior to his injury. His regular workday began at 8 a.m. and ended at 5 p.m., but he said he typically worked overtime 2½ hours on four or five evenings a week. He testified he tried to work overtime as often as he could during the week so as to avoid working overtime on weekends.

He did not join his office's softball team when the season opened in early July. After the season began, however, he said, his district superintendent, Walter Krick, asked him to join the team. The claimant testified he told him he did not have the time to play. After that conversation Krick spoke to him weekly about the team and a number of times asked him to join. The claimant said that notices were posted on the office bulletin boards telling of the need for players. He said he joined the team in late July after learning players were acutely needed because some players had left the team. When he joined the team he was given a full uniform with his office's name, South Chicago, printed on the shirt.

On August 12, 1970, the claimant fractured his left ankle while sliding into home plate during a league game

with the Illinois Bell Telephone Training Center. He testified that although 100 to 250 spectators usually turned out to watch a game only 50 to 75 spectators watched the game that night. Spectators were usually fellow employees or friends of fellow employees.

The claimant said every time he played he sacrificed overtime work for which he would have been paid 1½ times the normal hourly rate. He testified he would play with the team when there were not enough players to field a team. On Wednesday nights when the team needed him he would work an hour of overtime before going to play at 6:30 p.m. He did not receive compensation for playing in the games, he said.

William Murphy, a supervisory employee of Illinois Bell and the president of the Illinois Bell Men's Softball League, testified for the respondent. The league, he said, makes its own rules and bylaws free from company interference. He said that one of the league's rules requires each team to pay a $30 entry fee which was used to defray part of the cost of the league banquet. On cross-examination he testified that Illinois Bell's management insisted that no team use the company's name but he did say that one team had used the name Bell-Tell. He acknowledged that Illinois Bell had paid for the championship trophies and for the banquet in 1970. The witness said that the afternoon meetings, when schedules were made up and the bylaws drafted, took place on company property and were held on company time.

On review before the Industrial Commission, further evidence was offered in behalf of the respondent.

Walter Krick testified he was superintendent in charge of the South Chicago office in the summer of 1970. He said that he never asked Otis White to join the softball team. He admitted having discussed the team with many of the employees but denied ever asking any of them to join

it. He said he had attended a few of the games and said that there has been only a handful of spectators.

The softball team presented a problem for Illinois Bell, he said, because there were more telephones to be installed in the summer months than in any other period of the year. On league game nights, he said, he often could not get sufficient employees to work overtime and install phones. Krick testified that his inability to get employees to work overtime on Wednesday evenings reduced the number of phone installations and led to criticism of him by his superiors. He was not asked nor did he explain why Illinois Bell had not cancelled or curtailed the softball program.

To recover under the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, pars. 138.1 through 138.28) a claimant must prove, by direct evidence or by evidence from which an inference can be fairly and reasonably drawn, that his injury arose out of and in the course of his employment. (*Corn Products Refining Co. v. Industrial Com.,* 6 Ill.2d 439; *R. G. Le Tourneau, Inc. v. Industrial Com.,* 396 Ill. 435.) Findings of fact by the Industrial Commission are conclusive upon this court unless they are manifestly against the weight of the evidence, but this limitation upon judicial review does not apply to legal conclusions reached by the Commission. *Jewel Tea Co. v. Industrial Com.,* 6 Ill.2d 304; *Eugene Dietzen Co. v. Industrial Board,* 279 Ill. 11.

A case with a strong and we consider governing likeness to the one here is *Jewel Tea Co. v. Industrial Com.,* 6 Ill.2d 304. There, the only question before this court was whether the claimant's injuries sustained while playing softball on an employees team in an intracompany league, after working hours and away from the company premises, arose out of and in the course of employment under the Workmen's Compensation Act.

The Jewel Tea softball league was composed of 15

teams which were divided into 3 divisions which drew employee players from 153 stores. As here, the division teams played each other to reach a divisional champion, and the divisional champions played to determine the champion of the league. Games were played in public parks, and admission was not charged to spectators, who were mainly relatives or friends of the players. At the end of the season trophies were presented to the championship team at a banquet provided by the company.

Jewel paid the cost of the softballs, softball bats, and T-shirts, which bore the district manager's name on the front and the emblem of the Jewel Food Stores on the back. The employees furnished their own shoes, jackets, caps and pants. The company provided other support for the league by sponsoring an annual dinner for the team managers on the company's premises when schedules and league rules were drawn. The company also circulated information about games to encourage employee support for the league in its weekly publication and publicized the championship game through photographs and written accounts which appeared in the company's monthly publication.

The evidence before the arbitrator in *Jewel* showed that a representative of the district manager, whose duties included recommending employees for promotions, personally asked the claimant to play on one of the teams. The claimant at first refused but relented and decided to play after the representative asked him why he didn't have any spirit. He said that he decided to play because the representative's comments made him feel foolish.

In holding for the claimant we said elements to be considered in determining whether an employee's injuries arose out of and in the course of employment are the degree of employer organization and supervision of the recreational activity, the pressure, actual or inferred, exerted on the employee to participate, and the benefit

derived by the employee from the particular recreational activity. Regarding this last element the court said:

"In the instant case, by the defendant's own admission, the avowed objectives of the league were to stimulate good will and an *esprit de corps* among the employees. While this recreational activity was not a measurable bonus to the employees, it was a more subtle advantage of employment in that it afforded employees an opportunity of socializing both with each other and with the district manager and other executives through participation in. this sport. The consequent improvement of employee-employer relations through this activity was a significant if not tangible benefit to the employer." *Jewel Tea Co. v. Industrial Com.,* 6 Ill.2d 304, 314.

The record here shows the employer's organization and maintenance of the league, the pressure on the claimant to play and benefit, or intent to benefit, the employee-employer relationship from Illinois Bell's sponsorship. As in *Jewel Tea* the employer paid for the equipment necessary to operate the league, which was incidentially a much larger league than the one in *Jewel*; the company allowed employees to hold meetings on company premises and on company time, to draw up schedules and bylaws; the company encouraged interest and participation in the activity by publicizing the games and awards in the company publications; Illinois Bell paid the cost of the banquet and the trophies given the winning team in the year of the claimant's accident; and playing on a team was, as a practical matter, restricted to company employees.

The pressure exerted upon the claimant to participate according to the evidence here was at least as great as the pressure exerted in *Jewel Tea*. The claimant's testimony was that he agreed to play in the league only after

numerous requests by his district manager, and he played only on the evenings the team could not field enough players without him. This testimony was disputed by Walter Krick, but determinations of factual questions, including the credibility of witnesses, are for the Industrial Commission, and its findings will not be set aside unless they are contrary to the manifest weight of the evidence. *Swift and Co. v. Industrial Com.,* 52 Ill.2d 490, 496.

Too, the league provided a plan of recreational and healthful activity for Illinois Bell employees and gave them opportunity to socialize with each other and with supervisory personnel of the company. The respondent's superintendent gave conflicting testimony, it is true, but there was testimony by the claimant that from 100 to 250 fellow employees and friends would attend the games. We remarked in *Jewel Tea*: "The consequent improvement of employer-employee relations through this [type of] activity was a significant if not tangible benefit to the employer." 6 Ill.2d 304, 314.

The respondent's citation of *Keystone Steel & Wire Co. v. Industrial Com.,* 40 Ill.2d 160, misses the mark. The employer there did not pay for such things as baseball equipment, backstops and bases. This court distinguished its holding in *Jewel Tea Co. v. Industrial Com.,* 6 Ill.2d 304, by noting that in *Jewel Tea* the league was sponsored by the employer, equipment was supplied by the employer and the games were played at public parks. Also in *Keystone* the court said that, unlike the employer in *Jewel Tea*, the employer did not exert any pressure or encouragement to employees to participate. Neither is *Hydro-Line Manufacturing Co. v. Industrial Com.,* 15 Ill.2d 156, which is cited by the respondent, in point. There, no team was ever organized and no equipment ever furnished. This court noted in *Hydro-Line* too that its holding in *Jewel Tea Co.* was distinguishable.

For the reasons given, the judgment of the circuit

court of Cook County is reversed and the decision of the Industrial Commission is confirmed and the award reinstated.

*Judgment reversed;*
*award reinstated.*

MR. JUSTICE KLUCZYNSKI, dissenting:

I must respectfully dissent from the majority opinion. There are certain facts in evidence which the majority has failed to consider in reaching its decision.

Claimant testified that he knew many of the players on the team prior to joining it, but that he did not get to know them any better from playing softball. He also admitted that the majority of fellow workers at his location and the team manager asked him to play softball when he did not initially join the team, because they knew of his prior experience playing hardball.

Bill Murphy, the president of Illinois Bell Men's Softball League, testified that the positions of president, executive committee and team managers in the league were not limited to supervisory personnel, but were open to all employees whether they were supervisory or craft, union or nonunion employees. The president, executive committee and team managers would meet annually to formulate the league's bylaws and to schedule the general playing season. Murphy further testified that the league was completely supervised by its own personnel with no interference from Illinois Bell except for the sole provision that no Illinois Bell name or insignia would appear on the uniforms. He admitted he heard that a team used the name "Bell Tell" but he was not sure if this was the complete name or only part of it. But as the majority fails to note, Murphy stated that he had never seen a uniform bearing this name. Walter Krick also testified that he had never seen this name used on the uniforms.

The majority places great emphasis on *Jewel Tea Co.*

*v. Industrial Com.,* 6 Ill.2d 304, in support of its position. Such reliance is misplaced. In *Jewel Tea* each team was under the direction of a captain appointed by the employer's district managers, after whom the teams were also named. The captain recruited employees to make up the team, and the injured employee had been prevailed upon to join his district team. The playing schedule and the league rules were adopted at an annual dinner meeting paid for by Jewel and attended by Jewel's personnel chief. The games were held in public parks, and publicity was provided by the company's internal radio station and the in-company publications. The district and league champions were presented with trophies by Jewel executives at a special banquet given by Jewel.

In *Jewel Tea* this court sustained an award of compensation, since there were present sufficient elements to justify treating the claimant's activity as an incident to his employment. Among those elements were the high degree of employer organization, supervision, actual or inferred pressure on employees to participate in the activity, and the benefit derived by the employer through advertising or the promotion of employer-employee relations. (*Jewel Tea Co. v. Industrial Com.,* 6 Ill.2d 304, 309-310.) In regard to the last element, there is an essential inquiry of whether there are ascertainable and significant benefits to the employer from the recreational activity so that the activity could be regarded as an incident to employment. Other social-recreational cases before this court have been reviewed in light of these same elements to determine whether the injury sustained during the activity can be regarded as arising out of and in the course of employment. *Hydro-Line Manufacturing Co. v. Industrial Com.,* 15 Ill.2d 156, 159; *Keystone Steel & Wire Co. v. Industrial Com.,* 40 Ill.2d 160, 162; *Burmeister v. Industrial Com.,* 52 Ill.2d 84, 88.

In the case at bar, no evidence was presented as to

Illinois Bell's role in the organization of this league, or, in fact, if it played any role in the organization of the league. The facts clearly show that the supervision and control of the league were vested in its president and executive committee, and that these positions were not limited to management personnel. The only aspect of supervision by Illinois Bell was the provision that neither its name nor insignia would be printed on uniforms. This aspect was specifically contrary to claimant's position. While there was testimony as to a team using the name "Bell Tell," there was no evidence that this name was printed on uniforms or publicized. The sole publicity concerning the league came from bulletins provided for company use and from the in-company newspaper. While Illinois Bell did pay for equipment and umpire fees, the league collected entry fees from the teams to pay for trophies and its annual dinner. The fact that Illinois Bell paid for the trophies and the dinner in 1970 is not a significant factor under the circumstances.

Moreover, the employer pressure to participate in the activity that was manifested in *Jewel Tea* is lacking in this case. Claimant testified that Walter Krick, a supervisor, frequently asked him why he did not join the team, although Krick denied it. This is hardly equivalent to the employer pressure prevalent in *Jewel Tea*. And as the majority observes, Krick was criticized for not accomplishing his assigned tasks due to the lack of personnel to work overtime. It is difficult to conceive that Krick would exert pressure on a fellow employee to engage in recreational activity and thereby place himself in a position to be criticized by his employer for failing to complete his assignments.

Finally, reviewing the entire factual situation, I am unable to perceive any ascertainable and significant benefit accruing to Illinois Bell, which, in fact, suffered a detriment in not having employees available to work

voluntary overtime on the nights when games were scheduled. As was stated in *Keystone Steel & Wire Co. v. Industrial Com.,* 40 Ill.2d 160, 163, "The ball game was solely for the recreation and personal diversion of the employees, without any substantial business advantage to the company. Whatever improvement may have resulted in morale or employee-employer relations is far too tenuous to provide a basis for saying the injury was sustained either out of or in the course of the employment." Specifically in this case, claimant's own testimony reveals no visible improvement in morale or in an employee-employer relationship.

I find that the facts presented are totally insufficient to show the degree of employer supervision, compulsion on employees to participate, or benefit to the employer that is required in order to view this recreational activity as an incident of employment. It has frequently been held by this court that the Workmen's Compensation Act does not make an employer an insurer of the safety of his employees at all times while they are engaged in his employment. (*Hill-Luthy Co. v. Industrial Com.,* 411 Ill. 201, 205; *Fischer v. Industrial Com.,* 408 Ill. 115, 118.) This statement is even more applicable to the facts of the present case. The minimal support provided by Illinois Bell should be viewed for what it actually was, a gratuitous contribution to the recreational life of its employees. The circuit court did not err in setting aside the decision of the Industrial Commission.