(No. 47778.▮

MALCO, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Drusilla McQueen, Appellee.)

*Opinion filed November 24, 1976.*

John E. Cunningham, of Burgeson, Laughlin, Cunningham & Smith, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Gordon E. Winders, of Rock Island, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, Drusilla McQueen, sought workmen's compensation for injuries she sustained from an assault by a co-worker while employed by Malco, Inc. From evidence adduced at a hearing, the arbitrator found that the claimant's injuries arose out of and in the course of employment, causing the permanent and complete loss of use of the left arm to the extent of 15 percent, and awarded compensation. The Industrial Commission affirmed the award, and on *certiorari* to the circuit court of Rock Island County, the decision of the Commission was confirmed. Malco appeals, contending that the injuries resulted from a dispute unrelated to the employment and cannot, as a matter of law, be held to have arisen out of and in the course of employment.

Claimant was the only witness to testify at the hearing before the arbitrator. She related that she had been employed as a laborer for Malco for approximately four months. Malco manufactured storm windows and doors, and claimant's job consisted of operating a machine which cut aluminum siding used in the construction of these products. Prior to the start of her employment with Malco, and apparently for a number of years, certain production employees would participate in a weekly "paycheck pool."

This was a game wherein the last digits of each employee's payroll check number were considered a poker hand. Those who wished to take part would pay 50 cents, and the employee with the "best hand" would win the pool. Only the production employees in the shop participated in the check pool, and a different person would collect the bets each Friday. Claimant stated that among the 30 or so production employees, the number who participated each week varied between 7 and 10.

On October 10, 1969, the date of the assault, claimant testified that eight other employees took part in the game and that the pot was $8.50. (At this point in her testimony, the arbitrator interrupted, noting that 17 employees would have to participate in order to reach a figure of $8.50, if each was to contribute 50 cents. The claimant agreed that 17 employees would have had to participate and corrected her statement in this regard.) As the payroll checks were distributed that morning, Loretta Davis, a co-employee who worked at the other end of the shop, believed that she had won the pool because her check number contained three "nines." When the claimant received her check, however, it was obvious that she had the winning hand with four "aces." Davis approached the claimant's bench, where the latter was working, and requested the return of her 50 cents. Claimant refused. Another employee, who heard the dispute, supported the claimant, stating that during six years on the job she had never known a winner to return a bet and the claimant need not do so. Davis then crossed to the other side of the floor, and the claimant, knowing Davis to be a "bad talker," said, "Well, whatever you say you is the same thing and it don't make no difference I am not giving you no money." Claimant had resumed working when Davis came back and struck her on the forehead. The blow knocked claimant to the cement floor, fracturing her left shoulder.

Claimant further testified that the "paycheck pool"

was conducted during working hours and that supervisors were present at various times when the bets were collected and the winnings distributed. In response to a question on direct examination whether the management ever objected to the running of the check pool, claimant answered, "He didn't as far as I know."

Malco argues that claimant's injury is not compensable, because it resulted from a personal altercation which was totally unrelated to her employment. Claimant responds that an injury sustained from an assault is compensable if the risk of the assault was increased by the nature of the work or if the reason for the assault was a quarrel having its origin in the employment. Specifically, she argues that the assault arose out of conditions of the employment, namely, the operation of the weekly paycheck pool, which existed on the premises before she was employed. Claimant concludes that Malco obviously had knowledge of the check pool, because it was conducted during working hours when supervisors were present, and that it acquiesced, since, to her knowledge, Malco never objected to the conduct of the pool. It was these conditions, existing as part of the employment environment, which she maintains were a causative factor with respect to her assault.

Claimant has the burden of establishing that her injury arose out of and in the course of employment. (*Wise v. Industrial Com.,* 54 Ill. 2d 138, 142.) "[A]n injury will be said to arise out of the employment 'when, upon consideration of all of the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is required to be performed and the resulting injury.' " (*W.K.I.D. Broadcasting Co. v. Industrial Com.,* 42 Ill. 2d 236, 239.) In reviewing the decisions of the Industrial Commission, this court will not disregard permissible inferences drawn by the Commission, because different inferences might reasonably be drawn from the same facts, and we will not substitute our judgment unless

the findings of the Commission are contrary to the manifest weight of evidence. (*Schroeter v. Industrial Com.,* 62 Ill. 2d 284, 287.) However, when there is no dispute pertaining to factual matters and no conflicting inferences can be drawn therefrom, a question of law is presented. *Wright v. Industrial Com.,* 62 Ill. 2d 65, 71.

Reviewing the facts of the instant case we find that they are analogous to the facts presented in *Huddleston v. Industrial Com.,* 27 Ill. 2d 446. In *Huddleston,* the claimant had an argument with a co-employee concerning who should have the privilege of parking his privately owned automobile along a public curb in front of the employer's shop. Approximately two months later, the co-employee attempted to resume the argument when the men were working at a job site and the claimant had instructed the co-employee on the work he should do. The claimant refused to reargue the incident and was assaulted by the co-employee. In affirming the Industrial Commission's dismissal of the claim for compensation, this court found that the assault arose from a purely personal dispute with no relationship to the employer's work. The court noted that "[a]lthough the attack occurred at the place of employment, under the circumstances it is apparent that the employment did not increase the risk, or cause the altercation, but that claimant would have been exposed to the same abuse had he met [the co-employee] upon the street." 27 Ill. 2d 446, 448.

In the present case the argument between the claimant and Davis was purely personal in nature and had no relationship to their employment. As in *Huddleston,* the claimant's employment did not increase the risk of an attack or cause the dispute which led to it. Injuries resulting from an assault by a co-employee are compensable only if they are related to a risk inherent or incidental to the performance of employment duties. (*Thurber v. Industrial Com.,* 49 Ill. 2d 561, 563-64.) While the claimant appeared uncertain as to the number of employ-

ees who took part in the check pool on the day of the assault, it is clear from her testimony that there was no pressure placed upon the employees to participate. As she stated, the number of employees who regularly took part varied from 7 to 10, and those who wished to participate would contribute 50 cents. The record is totally devoid of any suggestion of coercion by the employer or by co-employees.

Claimant contends that Malco should be liable, because it had knowledge of and acquiesced in the conduct of the paycheck pool. Assuming without deciding whether, under these circumstances, Malco can be held to have knowledge of the check pool, we cannot find that an employer's alleged acquiescence to this type of activity is sufficient to impose liability for the claimant's injury. To hold otherwise would make an employer liable for injuries resulting from a lunchtime checkers game occasionally played by certain employees.

In considering the claimant's contention, it is appropriate to view the reasoning expressed by this court in cases dealing with the issue of whether an injury sustained during recreational activities connected to the employment arose out of and in the course of that employment. Such cases are typified by employee baseball games or golf outings, where an employee is injured while participating in the sport. In determining the compensability of such injuries, this court has considered the degree of employer organization, supervision, actual or inferred pressure on employees to participate in the activity, and the benefit derived by the employer through the promotion of employer-employee relations. (*Jewel Tea Co. v. Industrial Com.,* 6 Ill. 2d 304, 309-10; *Hydro-Line Manufacturing Co. v. Industrial Com.,* 15 Ill. 2d 156, 159; *Keystone Steel & Wire Co. v. Industrial Com.,* 40 Ill. 2d 160, 162; *Illinois Bell Telephone Co. v. Industrial Com.,* 61 Ill. 2d 139, 144-45.) In regard to the last element, there is an essential inquiry of whether there are ascertainable and significant

benefits to the employer from the recreational activity so that the activity could be regarded as an incident to employment. In applying this reasoning to the case at bar, it is obvious that there was no employer organization, supervision or pressure to participate in the check pool. In regard to the element of employer benefit, it is difficult to perceive any significant or ascertainable benefit to the employer from an activity in which it took no part and in which only a third of its production employees normally engaged. As the court said in *Keystone Steel & Wire Co. v. Industrial Com.*, 40 Ill. 2d 160, 163, "Whatever improvement may have resulted in morale or employee-employer relations is far too tenuous to provide a basis for saying the injury was sustained either out of or in the course of the employment."

The extension of compensation to injuries such as this would clearly go beyond the scope and intent of the workmen's compensation laws. An employer is not an insurer of the safety of his employees at all times during the employment. (*Fischer v. Industrial Com.*, 408 Ill. 115, 118.) We find the decision of the Industrial Commission to be against the manifest weight of evidence.

Accordingly, the judgment of the circuit court of Rock Island County, confirming the decision of the Industrial Commission, is reversed.

*Judgment reversed.*