(No. 51732

THE MINNESOTA MINING AND MANUFACTURING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Theresa Stankevitz, Appellee).

*Opinion filed December 20, 1979.—Rehearing denied February 1, 1980.*

WARD and KLUCZYNSKI, JJ., and GOLDENHERSH, C.J., dissenting.

Roddy, Power & Leahy, Ltd., of Chicago (John P. Roddy, of counsel), for appellant.

Nicol & Hill, of Hickory Hills (Lewis P. Gaines, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Claimant, Theresa Stankevitz, is the widow of John Stankevitz, an employee of the Bedford Park branch of the Minnesota Mining and Manufacturing Company (3M Company) who died in an automobile accident subsequent to a golf outing and banquet. His widow filed an application for adjustment of claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par.138.1 *et seq.*). The arbitrator denied compensation. On review, the Industrial Commission awarded compensation and the circuit court of Cook County confirmed the decision of the Commission. The 3M Company appeals directly to this court under our Rule 302(a) (58 Ill. 2d R. 302(a)). It is uncontroverted that the golf outing and dinner were sponsored by the Men's Golf League of the 3M Club of Bedford Park, Inc. (3M Club). The 3M Company contends, however, that its involvement with the Men's Golf League and the 3M Club was not sufficient to sustain the award. The resolution of this question will be determinative of whether Stankevitz sustained accidental injuries arising out of and in the course of employment; that is, whether the employee's death is compensable under the Act.

The 3M Club is an Illinois not-for-profit corporation and is comprised of certain employees of the Bedford Park branch of the 3M Company. There are approximately

6,000 such employees; of these, approximately 1,400 employees are members of the 3M Club. In order to qualify for membership in the 3M Club, the employees are required to pay an annual fee of $1. Membership entitles the employees to attend various club social events and also to participate in group outings at a cost which is lower than that offered to the general public.

The 3M Club is financed only in part by its membership dues. It obtains the majority of its revenue pursuant to a vendor agreement, dated July 15, 1967, between the 3M Company and the Automatic Retailers of America, Inc. As assignee under the agreement, the 3M Club is entitled to the profits earned on certain vending machines located on the company premises.

The parties presented substantial evidence before the arbitrator and the Commission concerning the degree of 3M Company involvement in the 3M Club. The evidence presented established that the 3M Club functioned without an administrative staff independent of the 3M Company employees. It also established that the 3M Club did not have its own facilities or office supplies. Instead, the 3M Club used the conference rooms and office supplies furnished by the 3M Company. Bulletins concerning 3M Club activities were printed by the company and were posted on the company's bulletin boards. While there was testimony concerning reimbursement by the 3M Club for the office supplies and performance of club administrative duties after working hours, the evidence established that the 3M Club meetings were conducted during the workday and that employees were not docked in pay for attending the meetings. The evidence established that although the 3M Club maintained a checking account separate from that of the 3M Company, the books and records of the club were audited by the auditor employed by the 3M Company. The books and records of the 3M Club are kept on the 3M Company's property, and the annual reports of the club list as the address of its registered agent the address of

the office of the 3M Company. The 3M Club did not circulate a newspaper. The activities of the 3M Club were reported, however, in the 3M Company newspaper subsequent to their occurrence; such events did not receive advance publicity in the company newspaper. However, notices of these activities were posted beforehand on the company's bulletin boards. The 3M Company testified as to its lack of encouragement of participation in the 3M Club. Solicitation of new members was conducted by company employees after working hours. There is some evidence that the $1 dues for club membership was collected during working hours. There was no showing that the company received any tangible economic benefit or increase in employee morale due to employee membership in the 3M Club. The purpose of the club, however, was to increase employees' morale.

From a review of the record, it is clear that the activities of the 3M Club were organized and managed by the employees. In addition to the organization of a 3M Club bowling league, the 3M Club members organized a group within the 3M Club referred to as the Men's Golf League of the 3M Club (the league). In order to be a member of the league, one was required to be a 3M Company employee and a member of the 3M Club. The golf outings, tournaments, and banquets were held primarily after working hours and were organized by the league members. The employees were not given time off from work to play golf. The league operated on a modest budget. Each member paid annual dues of $10.50, and the 3M Club donated $400 to the league during the year. At one time the league solicited prizes from the 3M Company but was refused. The fund for the golf prizes came from money paid by the participants in the Men's Golf League. Due to the league's limited finances, the individual members were additionally required to pay the cost of greens fees and cart rentals for each golf outing. The 3M Company contributed no financial aid to the league, provided no

equipment, and no company announcements or speeches by company officers were permitted at the outings. The company did not furnish transportation to any of the golf outings.

On Saturday, September 28, 1974, the league sponsored a golf tournament and banquet. The outing did not receive advance publicity in the 3M Company newspaper, and the golfers did not wear company uniforms on the golf course. Each league member paid for his greens fees, cart rental and for any food consumed during the outing. The golfers who attended the banquet later that evening paid an additional amount for their dinner. Prizes and trophies furnished by the league were awarded to the golfers at the banquet. No speeches by any 3M Company executives were made at any time during the banquet.

Stankevitz was captain of the golf team and attended the tournament and banquet on September 28, 1974. Since he was scheduled to work on the day of the outing, Stankevitz arranged for a substitute to work in his place and, in so doing, forfeited his right to receive premium pay to which he was entitled as a salaried employee who worked in excess of 40 hours per week. In the early hours of the following day, Stankevitz died from injuries sustained in a two-car collision.

As noted above, the arbitrator denied compensation. On review, the Industrial Commission reversed, finding the deceased to have sustained accidental injuries arising out of and in the course of his employment. The circuit court of Cook County confirmed the award. The issue before this court is whether the 3M Company was sufficiently involved with the league, and in turn with the 3M Club, so as to bring the activities of these groups within the course of employment. We find the Commission's finding of sufficient employer involvement to be contrary to the manifest weight of the evidence and reverse the holding of the circuit court.

This case presents a situation where injuries were

sustained by an employee subsequent to participation in a recreational social program of company employees. The program was related to the employment in that only employees or retirees could participate. The question is whether this activity was within the course of employment. It is to be resolved upon the determination of whether the extent of employer organization and sponsorship, pressure on employees to participate, employer supervision, and benefit to the employer through improved employee-employer relations were sufficient to bring the activity within the course of employment. *Malco, Inc. v. Industrial Com.* (1976), 65 Ill. 2d 426, 432; *Hydro-Line Manufacturing Co. v. Industrial Com.* (1958), 15 Ill. 2d 156, 160. See generally 1A A. Larson, Workmen's Compensation secs. 22.00 through 22.30, at 5—71 through 5—121 (1979).

In the landmark case of *Jewel Tea Co. v. Industrial Com.* (1955), 6 Ill. 2d 304, this court found injuries which were sustained in a company baseball league to be compensable under the Workmen's Compensation Act. Five significant factors supported that conclusion: (1) There was significant, if not tangible, benefit to the employer due to improved employee-employer relations which developed as a result of the recreational activity; (2) since the employees wore T-shirts which bore the company's name, the company was able to advertise and thereby derive economic benefit; (3) the company was closely integrated with the organization and operations of the teams; (4) the company encouraged the activity; and (5) subtle pressures were exerted on the employees to participate through the potential relationship between participation and job promotion. *Jewel Tea Co. v. Industrial Com.* (1955), 6 Ill. 2d 304, 314-15.

In the cases following the *Jewel* decision, this court has attempted to apply the same standards by which to measure the degree of employer involvement. The results, however, have varied in each case due to the difference in

factual situations presented. (Those cases where this court found the recreational social activity to be incident to employment: *Mid Central Tool Co. v. Industrial Com.* (1978), 72 Ill. 2d 569, 578; *Illinois Bell Telephone Co. v. Industrial Com.* (1975), 61 Ill. 2d 139; *Lybrand, Ross Bros. & Montgomery v. Industrial Com.* (1967), 36 Ill. 2d 410. Contra, *Burmeister v. Industrial Com.* (1972), 52 Ill. 2d 84; *Keystone Steel & Wire Co. v. Industrial Com.* (1968), 40 Ill. 2d 160; *Hydro-Line Manufacturing Co. v. Industrial Com.* (1958), 15 Ill. 2d 156.)

After an examination of the various factual situations presented in each of these cases, we find the facts of *Keystone Steel & Wire Co. v. Industrial Com.* (1968), 40 Ill. 2d 160, to be nearly indistinguishable from the facts in our case. There, the sole issue before this court was whether injuries sustained by an employee in an evening softball game were compensable under the Workmen's Compensation Act. The softball game was organized by the Keystone Employee Activity Association, a corporation which was run by the employees of the Keystone Steel & Wire Company. The employee corporation was financed in a manner similar to that of the 3M Club; that is, the employee corporation received the profits from certain canteens located on the company premises. Thus, it was a portion of the money the employees had deposited in the vending machines and canteens that provided the recreational corporations with funds.

The factual similarities between the *Keystone* case and this case go beyond the mere fact of financing: the trophies awarded to the employees were furnished with funds from the employees' corporation; results of the games were reported in the company newspaper; employees were permitted to trade shifts in order to participate in the recreational activities; schedules of the games were posted throughout the plant; and the use of company premises was authorized for the softball games.

In *Keystone* this court reversed the judgment of the

circuit court of Peoria County which confirmed the award granted by the Industrial Commission. It did so based upon a consideration of the facts that the company exerted no pressure or encouragement for participation, the company did not sponsor the event, the event was not held during regular working hours, and the company derived no substantial business advantage from the activity:

> "Whatever improvement may have resulted in morale or employee-employer relations is far too tenuous to provide a basis for saying the injury was sustained either out of or in the course of the employment.
>
> *** All the company did, in essence, is to cooperate in enabling employees to engage in social and recreational activities on their own time. To hold that such gratuitous contributions entail liability without fault for injuries at play penalizes the mere providing of benefits and will most certainly tend to discourage it. Facts such as those in this case are totally insufficient to convert this recreational activity into an incident of employment. [Citation.]" *(Keystone Steel & Wire Co. v. Industrial Com.* (1968), 40 Ill. 2d 160, 163.)

Although the claimant contends that the 3M Company sponsored and financed the activities of the 3M Club, the golf league, and the banquet, and coerced participation by the employees, the record does not support this contention. It discloses no greater employer involvement than was present in *Keystone.*

Here, the claimant argues that the employer benefited from the activities of the 3M Club through improved employee-employer relationships. As noted in the above quotation from *Keystone,* this is "far too tenuous to provide a basis for saying the injury was sustained either out of or in the course of the employment." *(Key-*

*stone Steel & Wire Co. v. Industrial Com.* (1968), 40 Ill. 2d 160, 163.) Also, it is stated in 1A A. Larson, Workmen's Compensation sec. 22:30, at 5—117 (1979): "It can be taken as the majority view that these morale and efficiency benefits are not alone enough to bring recreation within the course of employment."

Here, it appears that the 3M Company carefully avoided involvement in activities of its employees' organization beyond that which this court had found permissible in *Keystone.*

As Professor Larson has stated:

> "[S] ome arbitrary time and space limitations must circumscribe the area within which the 'benefit' establishes work-connection, the recreation cases must submit to some similar limitation, since otherwise there is no stopping point which can be defined short of complete coverage of all the employee's refreshing social and recreational activities." 1A A. Larson, Workmen's Compensation sec. 22:30, at 5—117 (1979).

If we expand the coverage of the Act to include such activities as were involved in this case and in *Keystone,* the individual claimant may be benefited but the employer will, of necessity, respond by prohibiting all such activities to the detriment of the employees generally.

It is well established that findings of fact are within the province of the Industrial Commission and are not to be disturbed on review unless contrary to the manifest weight of the evidence. (*Illinois Bell Telephone Co. v. Industrial Com.* (1975), 61 Ill. 2d 139, 143.) The Commission's finding that the golf outing and banquet were incident to the employment was contrary to the manifest weight of the evidence. The league was an employee organization which organized, managed, and supervised the golfing event. The 3M Company supplied neither the golfing equipment used at the outing nor the food consumed at the banquet. The company exerted no pressure or encouragement on employees to participate. It derived no advertising benefit

from the games, did not sponsor the tournament, and did not allow employees to take time off from work to participate. The trophies were presented at the banquet by the employees, and no speeches by company executives were made. Finally, the golf outing was scheduled on a non-regular workday.

Accordingly, the injuries of the deceased did not arise out of or in the course of the deceased's employment. Therefore, the judgment of the circuit court of Cook County, confirming the decision of the Industrial Commission, is reversed, and the award is set aside.

*Judgment reversed;*
*award set aside.*

MR. JUSTICE WARD, dissenting:

I must dissent from the conclusion of the majority because I consider it places this court in the role of erroneously taking over the function of the Industrial Commission to decide the facts and draw inferences. It appears that the majority has not given consideration to evidence which I deem requires a holding that the Commission's findings were not contrary to the manifest weight of the evidence. The majority only notes that the 3M Company assigned the vending machine profits to the 3M Club. It fails to consider the significant amounts involved:

In 1974, the 3M Club received from
    the 3M Company. . . . . . . . . . . . . . . . . .$22,680.73
In 1975, the 3M Club received from
    the 3M Company. . . . . . . . . . . . . . . . . .$17,228.63
In 1976, the 3M Club received from
    the 3M Company. . . . . . . . . . . . . . . . . .$16,372.94

It is clear that the club was maintained by the 3M Company. It was not simply an association by and for the benefit of employees. Also, I consider relevant the purpose for which the corporation was organized. It was stated to be: "This corporation is organized and shall be operated

exclusively for pleasure, recreation and the promotion and development of good fellowship \*\*\* among employees and retired employees and their families" of the 3M Company in the Bedford Park area. Ronald Smith, the personnel manager, testified that the 3M Club's activities involved company morale. He testified that the club increases efficiency and good will and cuts down on employee turnover by bettering employee morale.

I believe the majority opinion will have the effect of confusing the law regarding employer-sponsored clubs, entertainments and the like. I would affirm the circuit court's judgment which confirmed the finding of the Industrial Commission.

MR. CHIEF JUSTICE GOLDENHERSH joins in this dissent.

MR. JUSTICE KLUCZYNSKI, also dissenting:

I concur in the dissent of Mr. Justice Ward and feel that a few additional comments are appropriate.

It is my understanding that cases of this nature, in which an injury is sustained during social activities while away from work, are judged by the degree of employer sponsorship *or* by the benefit derived by the employer from the social activities in question. (1A A. Larson, Workmen's Compensation sec. 22 *et seq.* (1979).) An employer's exposure to liability under the Workmen's Compensation Act is thus expanded as his involvement increases; sufficient employer involvement renders the social activity incident to the employment (*Mid Central Tool Co. v. Industrial Com.* (1978), 72 Ill. 2d 569, 578). Given the substantial financial contributions by respondent and its other supportive actions, and assuming, as we have done before, "that the employer obtained the 'significant if not tangible' benefit of improved employee relations" (*Lybrand, Ross Bros. & Montgomery v. Industrial Com.* (1967), 36 Ill. 2d 410, 418, quoting *Jewel*

*Tea Co. v. Industrial Com.* (1955), 6 Ill. 2d 304, 314), I find no cause to hold that the Commission's decision is against the manifest weight of the evidence.