208

(Nos. 53418, 53419 cons)

MARVIN ROSE, Appellant, v. THE INDUSTRIAL COM-
MISSION *et al.* (Hyster Company, Appellee).—JOHN
SMITH, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Hyster Company, Appellee).

*Opinion filed May 22, 1981.*

James C. Serkland, of Scheele, Serkland & Boyle,
Ltd., of Chicago, for appellants.

Burgeson, Laughlin, Cunningham & Hare, of Chicago
(Robert Thomas Newman, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Two employees of respondent Hyster Company were injured playing "flag football" and sought compensation under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*). An arbitrator for the Industrial Commission awarded compensation. The Commission, however, found the injuries did not arise "out of and in the course of" employment and denied compensation. The circuit court of Vermilion County confirmed the Commission, and the employees appealed to this court under our Rule 302(a) (73 Ill. 2d R. 302(a)).

In the first of these consolidated cases, cause No. 53418, Marvin Rose, employed by respondent as a parts man, fractured his left wrist in a flag football game on Sunday, October 2, 1976. In cause No. 53419, John Smith, a crane operator for respondent, sustained a fracture of his right ankle on Sunday, September 19, 1976, in a similar game. The claims of both involve the work of an activities committee, and the details regarding it are relevant. The collective bargaining agreement between the employee union and respondent provided that the "Activities Committee" was to be composed of six members appointed by the union, five appointed by the employer, and the 12th member was to be a nonvoting member from the personnel department. The nonunion members were referred to by a union member as "just advisors." The committee meets monthly, apparently in the union office—a room in the company plant for which the union pays a monthly rental. The programs of the committee were financed by commissions from vending machines patronized by the employees, the types and locations of the machines and amount of commission being negotiated by the committee with the vendor. Some $24,000 per year

was received by the committee and used by it to finance employee social and recreational activities which it selected and approved. Among those activities was the football league composed of five 11-member teams, four of which were Hyster teams captained by Hyster employees. Funds for footballs, colored vests with numerals but not the Hyster name, umpires, trophies, and a party for the winning team were provided by the committee. Games were pre-scheduled, apparently by the team captains, and played on Sundays on noncompany property. Notices relating to the games and other activities could be placed on two bulletin boards used to distribute information regarding both union and company matters. Committee funds were kept in a special account separate from the company's and controlled by the committee and in its name, with checks requiring the signatures of the treasurer and president or vice-president, all of whom were union members, of the committee. Other activities, including a ski club, bowling, basketball, employee Christmas hams or turkeys, and an Easter egg hunt for the employees' children, were also financed and sponsored by the committee. Committee records were kept in the treasurer's home or union office. Results of football games were published in the company newsletter. Claimant Smith testified that a company engineer who had no supervisory authority over him had, in 1972, asked him about playing football, and that a "unit manager" had also asked him to play. It is not contended that employees were subjected to company pressure to join the team.

A number of earlier opinions of this court have considered the compensability of injuries received by employees engaged in organized recreational activities. Whether compensation was awarded in those cases turned upon the degree of employer involvement in and benefits from the activity in which the injury occurred. (*Gourley v. Industrial Com.* (1981), 84 Ill. 2d 303; *Board of Educa-*

*tion v. Industrial Com.* (1980), 81 Ill. 2d 17; *Minnesota Mining & Manufacturing Co. v. Industrial Com.* (1979), 78 Ill. 2d 182; *Illinois Bell Telephone Co. v. Industrial Com.* (1975), 61 Ill. 2d 139; *Keystone Steel & Wire Co. v. Industrial Com.* (1968), 40 Ill. 2d 160; *Jewel Tea Co. v. Industrial Com.* (1955), 6 Ill. 2d 304.) We recently reviewed those cases and others in *Gourley.* No worthwhile purpose would be achieved by again doing so here, since it is clear that the degree of benefit to the company here and its involvement with the football league are not sufficient to justify a finding that these injuries arose out of and in the course of employment. Indeed, counsel for claimants has candidly conceded that, except for the terms of the collective bargaining agreement in this case, the Commission's decision could not be said to be contrary to the manifest weight of the evidence. He vigorously urges, however, that recognition in the collective bargaining agreement of the activities committee and provision for its composition and financing establish that participation in the activities sponsored by the committee are reasonably incidental to the employment and that a causal connection exists between the employment and any injuries incurred in the course of those activities. Further, claimants argue, the agreement represents an exchange of obligations and benefits by the employer and employees whereby the latter agreed to exchange their services for certain benefits, including a recreation program. Thus, say claimants, by participating they "were collecting payment for services rendered," and, under the holding in *Gunthrop-Warren Printing Co. v. Industrial Com.* (1979), 74 Ill. 2d 252, are entitled to recover.

While claimants' arguments are not without some credibility, their counsel has cited, and we have found, no directly supporting authority. Nor do we believe the arguments can withstand close analysis. Their basic predicate is that since the employer has agreed to the establishment

of an activities committee to which the company appoints representatives, and that since the committee is financed by vending machines located on company property, any activity sponsored and financed by the committee automatically becomes employment related and any resulting injuries are employment caused. While not attaching particular significance to the fact, we note, contrary to the implications of claimants' argument, that the committee apparently pre-dated the collective bargaining agreement, which does not purport to create the committee, but simply provides how its members shall be selected and its activities financed. We note, too, that the committee is not, as claimants stated, "jointly controlled." The agreement clearly vests ultimate control of committee decisions in the union, which appoints a majority of the voting members.

Our fundamental difficulty with claimants' argument, however, is that its acceptance would extend liability under workers' compensation to an unprecedented degree, imposing liability upon employers for injuries incurred in activities with which the employer has only a minimal involvement and which he can neither regulate nor control. Illustrative of the problems are a few of the questions posed to claimants' counsel during oral argument: Are illnesses experienced by employees compensable when they result from impure turkeys or hams distributed by the committee? What about injuries suffered on skiing trips arranged by the ski club with committee sponsorship? Do employees injured on committee sponsored weekend and sightseeing trips have a right to compensation? Other similar questions regarding the breadth of claimants' theory of recovery readily come to mind. Were that theory to be accepted, the limits to which liability could, with some logic, be extended would substantially exceed existing boundaries.

Our prior decisions do not disclose the extent to which

collective bargaining in those cases involved provision for or reference to the employee recreational or social activities resulting in injury. Rather, they turned on the degree of employer involvement which we believe to be necessary before the injury can be said to arise out of and in the course of employment as the statute requires. We believe that to be the sounder approach and that without substantially more of the employer supervision, participation, control or benefit present in our earlier cases, the recognition in a collective bargaining agreement of an employee-controlled committee and provision for its financing and membership is insufficient to establish the compensability of injuries resulting from committee-sponsored recreational activities.

The judgment of the circuit court of Vermilion County is accordingly affirmed.

*Judgment affirmed.*